J-S78033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SHAWN ECKLUND | |
| Appellant | No. 462 WDA 2016 |

Appeal from the PCRA Order March 2, 2016
in the Court of Common Pleas of Venango County Criminal Division
at No(s): CP-61-CR-0000852-2011

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.: **FILED OCTOBER 31, 2016**

Appellant, Shawn Ecklund, appeals from the order entered in the Venango County Court of Common Pleas denying his petition for relief filed pursuant to the Post Conviction Relief Act[1] ("PCRA"). We affirm.

We adopt the facts and procedural history as set forth by the PCRA court's opinion.[2] Following a hearing, Appellant's PCRA petition[3] was denied

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] PCRA Ct. Op., 3/2/16, at 1-4. We note a typographical error in the PCRA court opinion on page 3. The PCRA court received a *pro se* letter from Appellant on June 26, 2015.

[3] We note that this Court's memorandum affirming the judgment of sentence was docketed on September 18, 2014. We adopt the PCRA court's analysis of the timeliness of the PCRA petition. ***See*** Trial Ct. Op. at 5-7; ***Commonwealth v. Ecklund***, 1665 WDA 2012 (unpublished memorandum) (Pa. Super. Aug. 5, 2014).

and this timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the PCRA court filed a responsive opinion incorporating its February 29, 2016 opinion.

Appellant raises the following issues for our review:

> The PCRA [c]ourt erred in denying [Appellant's] PCRA petition when his trial counsel was ineffective in failing to object to the trial testimony of Dr. Adams, who, in effect, testified as an expert witness.
>
> The PCRA [c]ourt erred in denying [Appellant's] PCRA petition when he argued that he should have been given the opportunity to explore his plea options.
>
> The PCRA [c]ourt erred in denying [Appellant's] PCRA petition when he argued that trial counsel was ineffective in failing to object when the District Attorney implied to the jury that the victim could have stated that more crimes had occurred.
>
> The PCRA [c]ourt erred in denying [Appellant's] PCRA petition when he argued that his trial counsel was ineffective in failing to have a psychological evaluation conducted to determine whether or not [Appellant] appreciated his actions and that they were wrong.

Appellant's Brief at 3-4.

Appellant contends counsel was ineffective for failing to object to the testimony of Dr. Adams regarding concussions because Appellant did not have the opportunity to obtain a rebuttal witness. *Id.* at 8. Appellant "argues that in hindsight, he would have taken the plea had he knowns [sic] that there was a possibility that he would have received the sentence that he ultimately received." *Id.* at 9. Appellant avers counsel was ineffective for failing to object when the District Attorney inferred he "could have been

- 2 -

charged with more crimes [which] means that he was guilty of more crimes." *Id.* at 12. Lastly, Appellant claims counsel was ineffective for failing to have a psychological evaluation conducted to prove that his post traumatic stress following his service in Iraq "affected his thinking." *Id.* at 12.[4]

Our review of appeals from the denial of relief under the PCRA is well-settled:

> [A]n appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party . . . . In addition, [t]he level of deference to the hearing judge may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined.

*Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008) (quotation marks and citations omitted).

> A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. Indeed, one

---

[4] We note that the totality of Appellant's argument in support of this claim is that he "testified at the time of the PCRA hearing that he had spoken to his attorney about post traumatic stress following serving six years in Iraq and that he specifically asked his attorney to get him a mental health evaluation to prove these issues affected his thinking." Appellant's Brief at 12. "We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review." *Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006). Given the trial court's analysis of the claim and the record before this Court, we decline to find the issue waived.

of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made[.]

***Commonwealth v. Johnson***, 966 A.2d 523, 539 (Pa. 2009) (citation omitted).

To be eligible for PCRA relief, [a]ppellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (listing, *inter alia*, the ineffective assistance of counsel and the unavailability at the time of trial of exculpatory evidence, which would have changed the outcome of the trial had it been introduced). Further, [a]ppellant must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. ***Id.*** § 9543(a)(3). . . . A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." ***Id.*** § 9544(b). . . .

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. ***Strickland v. Washington***, 466 U.S. 668, 687–91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This Court has characterized the ***Strickland*** standard as tripartite, by dividing the performance element into two distinct parts. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (1987). Thus, to prove counsel ineffective, [a]ppellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) [a]ppellant was prejudiced by counsel's act or omission. ***Id.*** at 975.

Relating to the reasonable basis prong, "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Courts should not deem counsel's strategy or tactic unreasonable "unless it can be concluded that an alternative not chosen

offered a potential for success substantially greater than the course actually pursued." ***Id.*** Also "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. . . . The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract."

Relating to the prejudice prong of the ineffectiveness test, the PCRA petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." Particularly relevant herein, it is well-settled that "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ***Strickland*** test, the court may proceed to that element first."

***Commonwealth v. Koehler***, 36 A.3d 121, 131-32 (Pa. 2012) (some citations omitted).

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

"[T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." Moreover, with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial."

- 5 -

*Commonwealth v. Timchak*, 69 A.3d 765, 769–70 (Pa. Super. 2013),

(citations omitted).

> In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence. . . .
>
> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.
>
> Furthermore, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1024 (Pa. Super.), *appeal denied*, 104 A.3d 523 (Pa. 2014) (quotation marks and citations omitted). "To sustain a claim of ineffectiveness, counsel's approach must be so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (quotation marks and citation omitted omitted).

After careful consideration of the parties' briefs, the record, and the decision of the Honorable H. William White, we affirm on the basis of the

PCRA court's decision.[5]  *See* PCRA Ct. Op. at 5-16 (holding, *inter alia*, that (1) counsel attempted to use Dr. Adams' testimony to his advantage to support the defense's contention that the injuries the victim sustained were not serious and did not support the aggravated assault charge;[6] (2) counsel discussed the plea agreement and determined Appellant would not admit to the aggravated assault charge and still have the court accept the plea agreement;[7] (3) the prosecutor attempted to bolster the credibility of the victim by arguing that if the victim was going to lie she could have accused Appellant of more serious misconduct;[8] (4) the court found counsel's strategy competent and his testimony credible and that per Appellant's admission regarding the simple assault charge, a defense based upon his mental condition was unavailable).[9]  Accordingly, we conclude the PCRA court's findings are supported by the record.  *See Fahy*, 959 A.2d at 316.

Order affirmed.

---

[5] We note that the PCRA court inadvertently miscited certain references to the notes of testimony from the PCRA hearing.

[6] *See* N.T. PCRA Hr'g, 1/26/16, at 48-52.

[7] *See id.* at 15-16, 18, 33-34, 45-46.

[8] *See id.* at 64.

[9] *See id.* at 19, 55-56.

J-S78033-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2016

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA  :
                             :
    v.                       :        CR. No. 852-2011
                             :
SHAWN LOUIS ECKLUND,         :             FILED
Defendant.                   :          APR 11 2016
                             :       COMMON PLEAS COURT
                             :         VENANGO CO. PA

**SCANNED**

### OPINION OF COURT

AND NOW, this 7th day of April, 2016, the Court has before it Defendant's Concise Statement of Matters Complained of on Appeal. The matters complained of on appeal raised in the Concise Statement are virtually identical to the issues raised in Defendant's Post-Conviction Relief Act petition ("PCRA"), dated October 2, 2015. Following a PCRA hearing on January 26, 2016, this Court issued an Opinion and Order of Court dated February 29, 2016 (entered on the docket March 2) denying Defendant's PCRA, addressing these issues at length.

Since the Court has previously addressed the identical issues raised on appeal in its February 29, 2016 Order of Court denying the PCRA, the Court will not issue further opinion on the matter. The Court would refer the Superior Court to its February 29 Opinion for this Court's reasoning in denying these issues raised in the Concise Statement.

BY THE COURT.

H. WILLIAM WHITE, Senior J.
*Specially Presiding*

cc:    DA
       Tina Fryling, Esq.

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA  :

                       :

      v.                    :        CR. No. 852-2011

                       :

SHAWN LOUIS ECKLUND,      :

    Defendant.            :

## ORDER OF COURT

AND NOW, this 29th day of February, 2016 the court has before it Defendant's Supplemental Motion for Post-Conviction Collateral Relief (hereinafter referred to as Supplemental PCRA). For the reasons discussed below, Defendant's PCRA petition is DENIED.

### *Factual Background*

The factual background of the case is not terribly complicated. Defendant was arrested following an altercation in which he assaulted his girlfriend, during which time his two minor children were upstairs in the same house. Defendant wanted access to the victim's cell phone, which she would not turn over, and he assaulted her in an attempt to get the cell phone. Upon realizing that someone outside the house was alerted to the assault going on inside, Defendant threatened the victim and his two children (also victims) to not report to police the events of the night, specifically telling the children he would kill them if they reported to the police. Defendant's girlfriend/victim reported to UPMC Northwest with concussion symptoms and other injuries, though was not admitted overnight and released.

The initial police investigation did not lead to charges being filed; however, after a second officer visited the victim at UPMC Northwest, received a written statement from the victim, and examined text messages from the children to their mother (separated from Defendant at the time).

1

Upon gathering all of this information, Defendant was arrested for and admitted to the assault. After arrest, the information was amended to include more serious felony charges, including aggravated assault; the initial information contained misdemeanors.[1] Prior to trial, Defendant was offered a take-it-or-leave-it plea from ADA Carbone, which included an admission of aggravated assault. Defendant did not take this plea, in part because of his insistence that he had not caused not intended to cause serious bodily injury.

*Procedural History*

The court will reproduce its procedural history from its March 2013 1925(b) Opinion of Court for the relevant time period, in the interests of judicial efficiency and consistency. The Defendant was charged with Aggravated Assault, both Serious Bodily Injury Inflicted and Serious Bodily Injury Attempted, Kidnapping, Intimidation of Witness, Endangering the Welfare of Children, all Felonies; Stalking, Terroristic Threats, False Imprisonment and Simple Assault, Misdemeanors. A four (4) day Jury Trial was conducted June 18th through June 22nd, 2012.

The Defendant, significantly, was found not guilty of Count 1, Aggravated Assault – Serious Bodily Injury Inflicted, not guilty of the Kidnapping charge, not guilty of Stalking and not guilty of False Imprisonment. The Defendant; however, was convicted of Count 2, Aggravated Assault – Serious Bodily Injury Attempted, in violation of 18 Pa. C.S.A. §2702(a)(1), a Felony 1; Count 4, Intimidation of Witness, in violation of 18 Pa. C.S.A. §4592(b)(2), a Felony 1; Count 5, Endangering Welfare of Children, in violation of 18 Pa. C.S.A. §4304(b), a Felony 3, and, the jury did find specially that it was in a course of conduct. Furthermore, he was found guilty of Terroristic Threats, in violation of 18 Pa. C.S.A. §2706, a Misdemeanor 1, as to the alleged victim, Jessica,

---

[1] The possible reason the charges were increased may have simply been spite. *Transcript of PCRA Hearing*, p. 45, ll. 15-16.

2

and the children, LE, born July 2nd, 2001, and GE, born September 9th, 1999, and, he was found guilty of Simple Assault, in violation of 18 Pa. C.S.A. §2701(b), a Misdemeanor 2.[2]

The Defendant was sentenced on August 3rd, 2012 to an aggregate period of incarceration of ninety-six (96) months to two-hundred and forty (240) months, followed by five (5) years consecutive probation. The Defendant did file a direct appeal to Superior Court. This Judge ordered a concise statement to be filed and the concise statement was filed on October 30th, 2012. The Judge in writing the opinion did need the transcripts, and the last transcript, Day 4, was docketed on January 10th, 2013.

Following his election to the Venango County District Attorney, Atty. White withdrew as counsel for Defendant January 14th, 2014, and a Public Defender was appointed to take his place. Atty. Misko entered his appearance March 31st, 2014. On September 18th, 2014, the Superior Court affirmed this court's sentence, and denying Defendant's direct appeal.

This court received *pro se* letters from Defendant on October 9th, 2014, February 27th, 2015, and June 26th, 2014. The substance of these letters is substantially constant in bemoaning a lack of communication from the Public Defender's office, and expressing a desire to procedurally advance the case. He specifically notes, in the June 2015 letter, that the lack of communication cost him the opportunity to appeal to the Supreme Court following the Superior Court's denial of his direct appeal following sentencing. On September 9th, 2015, Defendant filed a Motion for Appointment of New Counsel.

On September 25th, 2015, this court held a hearing on Defendant's Motion for Appointment of New Counsel. Following this hearing, the court noted the multiple attempts by Defendant to file a PCRA, evidenced by correspondence to the court and the Public Defender, to no avail.

---

[2] We note that we inadvertently stated subsection (b) in our Sentence Order of Court dated August 3, 2012, when we should have referred to subsection (a). Subsection (b) refers to the grading of that specific statute.

Accordingly, this court directed that Attorney Misko remain Defendant's representative with Defendant's acquiescence, under the premise that Defendant would not be giving up any rights he would otherwise have. This was also done with the understanding that Attorney Misko would file a PCRA on Defendant's behalf as soon as possible.

Defendant filed a PCRA Petition October 2nd, 2015, and at the same time a Motion for Permission to File Amended PCRA. The Motion was granted, to allow a more fully-developed PCRA to be filed but with the understanding the clock was working against Defendant. The Supplemental Motion for Post-Conviction Collateral Relief, currently before the court, was filed November 19th, 2015. A PCRA hearing was held January 26th, 2016.

In his Supplemental PCRA Petition, Defendant raises four issues:

1. Mr. Ecklund avers that trial counsel was ineffective in failing to object to the trial testimony of Dr. Adams which referred to general information about concussions and other "expert" testimony when the Court had previously ruled that this type of evidence would not be presented.

2. Mr. Ecklund avers that his trial counsel was ineffective in failing to explain to him the exact criminal charges lodged against him, the maximum prison terms and fines of said charges if the case was to head to trial, the exact criminal trial process in Venango County as it relates to the entry of a negotiated plea, and the details of any plea offer made by the Commonwealth to the Defendant.

3. Mr. Ecklund Avers that his trial counsel was ineffective in failing to object when the District Attorney implied to the jury that the victim could have stated that more crimes had occurred but she did not.

4. Mr. Ecklund avers that his trial counsel was ineffective in failing to have a psychological evaluation conducted to determine whether or not Mr. Ecklund could be held legally culpable for his actions and whether he appreciated his actions and that they were wrong.

The court will address these issues in turn.

4

*Analysis*

The court will address first the timeliness of appeal, as it represents a jurisdictional question. Only after a PCRA petition has been deemed timely and the court has determined it has jurisdiction to hear the petition can the merits of the petition be reached.

## I. *Timeliness of Appeal*

At the PCRA hearing, the court addressed the issue of timeliness of the filing the instant Petition. The Post-Conviction Relief Act establishes the timeframe in which petitions may be filed under the Act.

(b) Time for filing petition.—

(1)     Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2)     Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3)     For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

5

42 Pa. C.S.A. § 9545(b). Pennsylvania courts have repeatedly affirmed that timeliness questions invoke jurisdiction, and restrict the court's ability to hear such petitions:

> The time requirements established by the PCRA are jurisdictional in nature; consequently, Pennsylvania courts may not entertain untimely PCRA petitions. *Commonwealth v. Watts*, 611 Pa. 80, 23 A.3d 980 (2011); *Commonwealth v. Brown*, 596 Pa. 354, 943 A.2d 264, 267 (2008); *Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157, 1161 (2003). We have repeatedly stated it is the appellant's burden to allege and prove that one of the timeliness exceptions applies. *Commonwealth v. Beasley*, 559 Pa. 604, 741 A.2d 1258, 1261 (1999). Whether Appellant has carried his burden is a threshold inquiry prior to considering the merits of any claim.

*Commonwealth v. Edmiston*, 65 A.3d 339, 346 (Pa. 2013).

Under § 9545(b)(1), a defendant must file an appeal within a year of the decision becoming final. Per § 9545(b)(3), a decision is final at the expiration of the time period to seek appellate review. Defendant filed direct appeal to the Superior Court following the trial court's denial of post-sentence motion. The Superior Court denied this appeal on September 18, 2014. From that point, Defendant had 30 days with which to take appeal with the Pennsylvania Supreme Court. *See* Pa. R.A.P. 1113. Defendant chose not to exercise this option; therefore, for purposes of § 94545(b)(1), the one-year limitation to file a PCRA petition began to run October 20, 2014, and expired October 20, 2015.[3] *Commonwealth v. Rojas*, 874 A.2d 638, 644-45 (Pa. Super. Ct. 2005) ("As such, Appellant's judgment of sentence became final for PCRA purposes on Monday, December 16, 2002, when the thirty-day appeal period expired for seeking review with our Supreme Court.").

---

[3] As noted in *Rojas, supra*, 874 A.2d at 643 n. 10, per 1 Pa. C.D.A. § 1908, when the last day of filing falls on a Saturday or Sunday, "such day shall be omitted from the computation." Therefore, when the direct appeal was dismissed September 18, 2014, the period to appeal to the Supreme Court would normally have expired October 18, 2014. However, this was a Saturday, therefore the period in which to appeal to the Supreme Court actually expired October 20, 2014, the following Monday. One year from then, October 21, 2015, the PCRA one-year period expired.

Following the hearing in regards to Defendant's Motion for Appointment of New Counsel, the court directed Atty. Misko to file a PCRA petition to preserve Defendant's rights. Defendant, through his attorney, filed his PCRA October 2, 2015. This fell within the one-year period. Given the short time-frame from the Motion for Appointment of New Counsel hearing to the date the PCRA would be time-barred, the court granted Defendant's Motion for Permission to file an Amended PCRA. Pa. R. Crim. P. 905(A) ("Amendment shall be freely allowed to achieve substantial justice.") The Amended PCRA was filed November 10, 2015.

Given these dates, the court concludes that the PCRA was timely filed, and is properly within the court's jurisdiction.

*II. Merits of the Appeal*

Moving to the merits of the petition itself, however, the court is not as inclined to side with Defendant. As recited above, Defendant raises four issues, each sounding in the averred ineffectiveness of Defendant's trial counsel.

Each of the alleged errors are based in an allegation of ineffectiveness of counsel. Analysis of an ineffective assistance of counsel claim beings with

> the presumption that counsel rendered effective assistance. To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–91, (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

7

*Commonwealth v. Oliver*, --- A.3d ---, 2015 PA Super 261 (Pa. Super. Ct. Dec. 14, 2015), *quoting Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (some internal citations omitted). Each prong must be met to carry a claim of ineffective assistance of counsel. *Id., citing Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011).

To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. *Commonwealth v. Mason*, --- A.3d ---, 2015 WL 9485173 (Pa. Dec. 29, 2015), *citing Strickland*, 466 U.S. at 694; *Commonwealth v. Laird*, 119 A.3d 972, 978 (Pa. 2015). "Where matters of strategy and tactics are concerned, '[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Id., quoting Commonwealth v. Spotz*, 84 A.3d 294, 311–12 (Pa. 2014), *citing Commonwealth v. Colavita*, 606 Pa. at 21, 993 A.2d 874, 887 (Pa. 2010).

The court will apply this standard to the four distinct claims raised in Defendant's PCRA.

a. *Trial counsel's effectiveness in failing to object to the trial testimony of Dr. Adams which referred to general information about concussions and other "expert" testimony when the Court had previously ruled that this type of evidence would not be presented.*

Defendant next contends that Atty. White should have objected to Dr. Adams providing testimony regarding the long-term effects of the concussion sustained by the victim.

During the PCRA hearing, Atty. White noted that at the time, the particular ADA involved in this case had certain habits that could be frustrating to defense attorneys, leading Atty. White to file a motion in *limine* prior to jury selection, to ensure he was not blindsided by any witnesses. *Transcript of PCRA Hearing*, pp. 45-46, ll. 23-9. On the day of jury selection, at the mini-call in front of the Hon. Judge Boyer, the two children's counselors would be excluded from trial, for failure to produce expert reports. However, the concussion "expert," Dr. Adams, was allowed to

8

testify as a fact witness. *Id.* at pp. 46-47, 25-2. As the emergency room doctor who saw the victim when she was admitted, he clearly had the ability to testify as to what he witnessed that night, and the diagnosis, and was able to use the emergency room report to that effect.

At trial, Defense counsel learned that Dr. Adams was a certified boxing consultant, medical consultant, and/or referee. *Id.* at p. 49, ll. 1-3. Dr. Adams was cross-examined by Atty. White, and Atty. White and the Court discussed whether Dr. Adams could testify as to the concussions, especially where the emergency room doctor, as here, has the specialized knowledge regarding concussions. *Id.* at p. 49, ll. 5-11. Partly as a matter of strategy, Atty. White wanted to allow the testimony to show that, even though Dr. Adams was familiar with the range types of concussions, the one suffered by victim was comparatively mild, not requiring an overnight stay or wake-up procedure.[4] *Id.* at p. 49, 14-19. Atty. White stated in the PCRA hearing that he used this testimony to fit in with the general defense narrative that the injury suffered was not "serious" and would not support the aggravated assault charge. *Id.* at p. 49, ll. 21-25.

Defendant specifically challenges Atty. White's failure to object to Dr. Adams testimony. However, Atty. White has articulated the trial strategy wherein he actually attempted to use the testimony to his advantage, in a manner which fit in with the defense's contention that the injuries were not serious, and did not support the aggravated assault charge. The testimony shows that there would be no real basis for objecting to this testimony, and in fact, had Atty. White objected at trial, this Court would have overruled that objection.

Consequently, Atty. White's failure to object to the testimony of Dr. Adams did not render his advocacy ineffective, and Defendant's claim is denied.

b. *Trial counsel's effectiveness in not explaining to Defendant the exact criminal charges lodged against him, the maximum prison terms and fines of said charges if the case was to head to*

---

[4] The wake-up procedure is where a concussion victim is awoken every hour following discharge from the hospital.

*trial, the exact criminal trial process in Venango County as it relates to the entry of a negotiated plea, and the details of any plea offer made by the Commonwealth to the Defendant.*

Next, Defendant alleges Atty. White was ineffective in discussing the nature of the exact criminal charges, the maximum prison terms and fines, the criminal process relating to the plea, and the plea offer details.

Pennsylvania appellate courts have articulated that it can be ineffective assistance of counsel when the conduct of the attorney leads to the defendant rejecting a plea deal the defendant would have otherwise accepted. For example, in *Commonwealth v. Steckley*, the Superior Court stated,

> Under the terms of the Commonwealth's proposal, Steckley would plead guilty to each of the crimes charged, and the Commonwealth would recommend that the trial court impose an aggregate sentence of two to six years' incarceration. Because this arrangement did not involve the dismissal of charges or a negotiated sentence that would bind the trial court upon its acceptance of the plea, it is difficult to imagine any reason why the court would have rejected it. It defies common sense to believe that the trial court, for no apparent reason, would have rejected the plea bargain and ordered the parties to endure a lengthy and expensive trial. *Cf. Commonwealth v. Chazin*, 873 A.2d 732, 737 (Pa.Super.2005) (rejecting ineffective assistance of counsel claim where the trial judge explicitly stated that he would not have accepted petitioner's guilty plea where the agreement called for a negotiated sentence of four to eight years' imprisonment).

*Commonwealth. v. Steckley*, 128 A.3d 826, 835 (Pa. Super. Ct. 2015). The Superior Court there found that the conduct of the attorney lead to the defendant rejecting a deal he would have ordinarily accepted. This is in contrast to a situation such as *Chazin*, where the court found no prejudice where the trial court would not have accepted the plea agreement between the prosecutor and defendant. *Chazin, supra*, 873 A.2d at 737.

One of the prongs of the test as enumerated above is that the alleged error must have caused prejudice to the Defendant. In this situation, the Court does not find that such prejudice occurred.

10

During his testimony, Atty. White relayed that he discussed the plea agreement with Defendant. Understanding the nature of the DA's office at the time, Atty. White understood that the plea offer was not negotiable. Therefore, when he discussed the plea with Defendant, Atty. White was hamstrung regarding the plea agreement, because "the key was the aggravated assault. He could not factually admit to that in order to get the plea through." *Transcript of PCRA Hearing*, p. 43-44, ll. 25-1. Therefore, the court would not accept the plea agreement, because Defendant would not be able to admit to the charges during the guilty plea colloquy.

The tendered plea agreement included a charge of aggravated assault. This charge would include an intent by Defendant to cause serious bodily injury ("SBI"). As Atty. White discussed on direct examination, "That was something that Mr. Ecklund indicated to me he could not make a factual admission on. He never intended to cause her serious bodily injury, nor did he think he attempted serious bodily injury." *Transcript of PCRA Hearing*, p. 43 ll. 15-18. Defendant stated on cross "It was [the defense's] position that she wasn't – it wasn't a serious bodily injury." *Id.* at p. 32, ll. 17-18. Instead, Defendant believed and could only admit in a guilty plea hearing that he had committed only simple assault and terroristic threats. *Id.* at p. 32, ll. 11-17.

Additionally, when asked on cross why he rejected the plea deal, Defendant stated, "Yeah. We rejected it, as I said before, because of the intimidation of witnesses if I was found not guilty of aggravated assault I was told intimidation of witnesses would be dropped to the highest misdemeanor or highest charge item on the list." *Id.* at p. 32, ll. 7-10.

Therefore, the court does not see that Defendant was prejudiced by any alleged failure on Atty. White's part. If the information allegedly not relayed to Defendant were in fact communicated, that does not appear to change the fact that Defendant would not have been able to admit to the factual basis for this Court to accept a guilty plea to aggravated assault. Unless

11

Defendant is arguing that in the context of more information about the severity of the crimes he would have been willing to perjure himself, this Court does not see where the prejudice arises. Therefore, the situation is very similar to *Chazin, supra*, 873 A.2d at 737, where the court found no prejudice where it would have explicitly rejected the plea deal. Without the factual basis consistent with the elements of the plead-to charges established, this Court would likewise have rejected the proffered plea.

Further, Defendant acknowledged that as part of the defense's strategy, he and Atty. White looked towards the intimidation charge. Where they felt they had a chance of defeating the aggravated assault charge at trial, arguing a lack of an SBI and lack of intent to cause SBI, the intimidation charge would also be reduced to a misdemeanor. This deliberate decision on the part of the defense was a calculated move in the hopes of reducing the eventual sentence to even less that as was offered in the plea deal. This Court will not jump to the conclusion of ineffective counsel when a trial strategy does not pan out, as appears to be the case here.

As the well-established law states, all prongs of the test for ineffective assistance of counsel must be present for the Court to find in Defendant's favor. Having not suffered prejudice, this prong is not met, and is fatal to Defendant's claim.

Other testimony adduced during the PCRA hearing indicates that Atty. White was indeed available to discuss with Defendant the trial procedures and other facets of the case, including the charges. *Transcript of PCRA Hearing*, p. 42-45. The Court finds Atty. White's testimony regarding his availability and preparation credible. On the arguments that Atty. White was otherwise deficient for failing to discuss the trial procedure, maximum plea offer, and the like, Defendant's claims are likewise denied, as they were not proved given the credible testimony of trial defense counsel.

12

c. *Trial counsel's effectiveness in not objecting when the District Attorney implied to the jury that the victim could have stated that more crimes had occurred but she did not.*

Next, Defendant argues that Atty. White's failure to object to ADA Carbone's use of "rape" in closing statements constituted ineffective assistance of counsel. Defendant alleges that the use is consistent with the implication that Defendant could have been charged with greater crimes, including and namely rape. This would suggest to the jury to find Defendant guilty on the charged offenses, since Defendant already got a break from ADA Carbone in the form of reduced charges.

The context of the use of the word "rape" is determinative here. The word arose in the context of the statement by ADA Carbone attempting to bolster the credibility of the witness, and not, as Defendant argues, in an attempt to unfairly influence the jury. The context of the case as a whole did involve a "he-said-she-said" component, in that only Defendant and the victim were the only "eye witnesses" to the assault itself. The children were within earshot but not see the assaults. Therefore, Atty. White during trial did try to discredit the victim and her version of the assault.

Once the victim's credibility was arguably discredited by Atty. White, ADA Carbone would then have the right, though perhaps more likely a duty, to attempt to rehabilitate the victim's credibility. It is in this context that the word "rape" was used. ADA Carbone's statement, in relevant context, was:

> I believe what she had to say. And the thing is that it doesn't benefit the victim by saying it's worse. In fact, if she wanted to get him in big, big trouble, she could have said, oh, he raped me. She didn't say that. She could have made it a lot more damning than she said. But what she did is she said it the way it happened.

*Transcript of PCRA Hearing*, pg. 63, ll. 9-15. From this quote, it is abundantly clear that not only is ADA Carbone not implying rape could have been charged, but explicitly says rape was not even accused. ADA Carbone, this Court concludes, was not insinuating that Defendant committed more crimes, but instead was only arguing that if the victim was going to lie about the charges, she could

13

have alleged a more serious criminal misconduct. While of course not necessarily being true, it is an argument that this Court has heard from prosecutors on multiple occasions,[5] and one this Court does not find inappropriate.

Even had Atty. White objected to ADA Carbone's use of "rape" in his closing arguments, the Court would have overruled the objection. The Trial Court may have given a limiting instruction regarding ADA Carbone's use of "rape," but we concluded that there was nothing wrong with the ADA's argument in this case using that particular term. Accordingly, Atty. White's failure to object was not ineffective assistance of counsel.

d.  *Trial counsel's effectiveness in not having a psychological evaluation conducted to determine whether or not Mr. Ecklund could be held legally culpable for his actions and whether he appreciated his actions and that they were wrong.*

Finally, Defendant contends Atty. White was deficient in his representation of Defendant for failing to have a psychological evaluation done on Defendant prior to trial. Defendant spent time as a civilian contractor in Iraq during wartime for six years prior to the assault. Defendant states that as a result of his time in Iraq and other parts of his life, "when someone says something to me, either I get angry right away or I act in a different way than someone who hasn't had the problems that I have had would act. I mean -- I mean, I'm just different." *Transcript of PCRA Hearing*, p. 18, ll. 4-7. Because of that difference, Defendant wanted a psychological evaluation.

During his PCRA testimony, Atty. White discussed that under the Pennsylvania application of the *M'Naghten* Rule, even Defendant's account of what happened would not entitle him to relief. *Id.* at p. 53, ll. 9-11. That is, even assuming any mental condition Defendant alleged himself to have at the time of the assault, his available defenses would not change, and he would not have had any better chance of acquittal of aggravated assault. To this end, Atty. White did discuss with

---

[5] Atty. White has testified that he has made the same argument in cases he's tried since becoming the DA. *Transcript of PCRA Hearing*, p. 64, ll. 13-15.

14

Defendant, and developed at trial, Defendant's service in Iraq in the civilian context, but this would be the extent of helpfulness of his mental condition. *Id.* at p. 53, ll. 12-21. However, Atty. White determined that based on Defendant's admissions regarding striking the victim over the cell phone, actual defenses based on mental condition would not be available. *Id.* at p. 54, ll. 3-11.

The Court finds Atty. White's strategy to be competent and his testimony regarding the issue credible. Even though Defendant was at some point diagnosed with Post-Traumatic Stress Disorder ("PTSD") while in the Venango County Jail, this, in-and-of itself, would not have availed Defendant of any additional defenses. This is further compounded by the fact that Defendant was lucidly aware of his actions, and candidly admitted he was guilty of simple assault. This explained coherency would complicate an effort to establish a mental capacity defense, and therefore, Atty. White's determination that the psychological evaluation would be a waste of limited time and financial resources does not point to ineffective assistance. Defendant's theory was, "I hit her, knocked her around somewhat but I did not seriously injure her not did I intent to." The jury acquitted Defendant of kidnapping and aggravated assault-SBI caused. In the context of Defendant's version of the facts, this was an effective defense. Therefore, the fourth claim of Defendant's PCRA likewise fails.

### Conclusion

For the reasons discussed, *supra*, Defendant has failed to carry his burden to demonstrate that Atty. White rendered ineffective assistance as his trial counsel. For each of the four distinct claims, there is insufficient showing that Defendant was prejudiced by Atty. White's tactical decisions. As the *Mason* court restated, simply because a trial tactic was not successful does not guarantee the PCRA court finding the assistance was ineffective. Instead, there must be some alternative strategy that would have had a substantial potential for success greater than that of the

15

strategy chosen. Here, none of the objections Defendant charges Atty. White should have made would have had a substantially greater potential for success. Likewise, the psychological evaluation was a trial strategy which was not substantially less likely to succeed than getting the evaluation before trial. In terms of the plea deal offer, because Defendant could not have established the factual basis for the plead-to charges, there was no prejudice to Defendant. Accordingly, Defendant's PCRA petition is hereby DENIED.

BY THE COURT,

H. WILLIAM WHITE, Senior J.
*Specially Presiding*

cc: DA
Tina Fryling, Esq.

16