J-S68003-15

2015 PA Super 261

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY EDWARD OLIVER, | |
| Appellant | No. 629 EDA 2014 |

Appeal from the PCRA Order February 7, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005530-2011

BEFORE:  BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

OPINION BY BENDER, P.J.E.:              **FILED DECEMBER 14, 2015**

Appellant, Anthony Edward Oliver, appeals *pro se* from the post conviction court's February 7, 2014 order denying his petition for relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

On February 21, 2012, Appellant pled guilty to the offense of theft by deception, 18 Pa.C.S. § 3922, and was contemporaneously sentenced by the trial court to a term of 2-5 years' incarceration for that offense. Appellant was charged in connection to his drafting of a bad check on February 18, 2011, from a bank account that had been closed two months' prior. Appellant used that fraudulent check to purchase thousands of dollars' worth

of diving equipment from a business in Montgomery County. Appellant did not file a direct appeal.

On February 14, 2013, Appellant filed a document titled, "MOTION CHALLENGING VALIDITY OF PLEA" (hereinafter, "the Motion"). By order dated February 25, 2013, the PCRA court construed the Motion as a PCRA petition and appointed Thomas Carluccio, Esquire, to represent Appellant as PCRA counsel. Attorney Carluccio subsequently filed a **Turner/Finley**[1] "no merit" letter and a motion to withdraw representation, and the PCRA court issued a notice of its intent to dismiss the Motion pursuant to Pa.R.Crim.P. 907 on January 10, 2014.[2] The trial court ultimately issued a final order denying the Motion on February 7, 2014.

---

[1] **Commonwealth v. Turner**, 544 A.2d 297 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[2] Although Attorney Carluccio's no merit letter appears to have been docketed on January 31, 2014, the letter itself is dated May 14, 2013. It is apparent from references made to the no merit letter in the PCRA court's Rule 907 order that the court was in possession of the no merit letter when the Rule 907 order was issued. However, Attorney Carluccio's petition to withdraw was clearly not filed until after the PCRA court issued the Rule 907 order, as Attorney Carluccio's petition to withdraw references that order. Despite these irregularities, Appellant does not contest the PCRA court's acceptance of Attorney Carluccio's no merit letter and petition to withdraw in his brief, nor has Appellant argued or preserved a claim challenging PCRA counsel's stewardship. Appellant did file a motion for an extension of time to file a response to the PCRA court's Rule 907 order; however, Appellant does not claim in his brief that the PCRA court erred by not granting him an extension.

Appellant filed a timely, *pro se* notice of appeal, and now presents the following questions for our review:

[I.] Did the lower court err when it re-characterize[d] Appellant's Motion Challenging Validity of Plea as a petition for relief under the Post-Conviction Relief Act ("PCRA"); 42 Pa. C.S. §§ 9541 - 9546, where [the] Commonwealth's failure to provide consular notification and access pursuant to Article 36(l)(b) of the Vienna Convention on Consular Relations, and the Pennsylvania Department of Corrections[] acknowledged imposition of additional sentencing conditions as a requirement for parole under that agreement, as well as the DOC's admitted destruction of exculpatory evidence and legal materials in active criminal trial and appellate matters, did not implicate any of the available remedies under the PCRA statute?

[II.] Did the lower court err when, for the first time on appeal, Appellant alleged that the Commonwealth breached the plea agreement, where allegations of breach entitled Appellant to an evidentiary hearing as a matter of law, as [the] claims were not "palpably incredible" or "patently frivolous or false" on their face nor clearly refuted by the record, and where Appellant's claims were substantiated by state agency records?

[III.] Did [the] Commonwealth fail to comply with its mandatory duty to provide Appellant with consular notification and access under Article 36(1)(b) of the Vienna Convention and [A]rt. 16(1) of the Bilateral Agreement between the United States of America and the United Kingdom (UK), where Appellant is a citizen of the UK, and where Appellant was already in the custody of the DOC and had been interviewed by immigration agents before he was conveyed to Montgomery County?

[IV.] Was trial counsel ineffective, where counsel failed to conduct a full investigation of Appellant's case and background after being advised of extenuating circumstances by Appellant, and for failing to advise Appellant of the deportation consequences of pleading guilty?

[V.] Was appellate counsel ineffective, where counsel failed to conduct a full investigation of Appellant's case and background after being advised of extenuating circumstances by Appellant, where counsel was unfamiliar with federal and international law as it related to Appellant's case?

Appellant's Brief, at 4-5.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

Initially, we note that Appellant failed to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, despite being ordered by the PCRA court to do so. **See** Order, 2/27/14, at 1 (single page). On this basis alone, we could find that Appellant waived all of the above claims of error.

> "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." [***Commonwealth v.***] ***Lord***, 719 A.2d [306,] 309 [(Pa. 1998)] (emphasis added). Thus, waiver under Rule 1925 is automatic.

***Commonwealth v. Butler***, 812 A.2d 631, 633 (Pa. 2002).

However, our review of the record below indicates that Appellant was still represented by Attorney Carluccio at the time the PCRA court issued its order for him to file a Rule 1925(b) statement. Indeed, the PCRA court did not grant Attorney Carluccio's petition for leave to withdraw until March 4,

2014. **See** Order, 3/4/14, at 1 (single page).[3] Following the order granting Attorney Carluccio leave to withdraw, the PCRA court made no further efforts to inform Appellant of his responsibility to file a Rule 1925(b) statement.

Given the irregularities in the PCRA court's treatment of Attorney Carluccio's **Turner**/**Finley** no-merit letter and corresponding petition for leave to withdraw as Appellant's counsel (the PCRA court ideally would have accepted the no-merit letter and granted corresponding petition for leave to withdraw prior to or contemporaneous to the order denying the Motion on February 7, 2014), we decline to apply **Lord**/**Butler** waiver in the very limited and narrow circumstances of this case. Had Appellant's counsel been solely responsible for the failure to file a Rule 1925(b) statement on Appellant's behalf, Appellant would have been entitled to a remand for the filing of a Rule 1925(b) statement pursuant to Rule 1925(c)(3) ("If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge.").

---

[3] Attorney Carluccio also filed with this Court a petition for leave to withdraw his appearance on March 7, 2014. We issued an order on March 31, 2014, stating that "in light of the PCRA court's March 4, 2014 order[,] counsel's appearance is withdrawn." **See** Order, 3/31/14, at 1 (single page).

Nevertheless, we find it unnecessary to remand for the filing of a *pro se* Rule 1925(b) statement because 1) Appellant has not requested such relief; and 2) the PCRA court issued a Rule 1925(a) opinion which provides us with sufficient information to address any claim not specifically addressed in that opinion.

\*\*\*

Appellant's first claim concerns the PCRA court's decision to construe the Motion as a PCRA petition. Appellant contends that the PCRA court erred in this regard because he believes the PCRA does not provide a remedy for treaty violations. Appellant contends that he has been denied his rights under the Vienna Convention on Consular Relations,[4] and a bilateral treaty between the United States and the United Kingdom.[5] Specifically, Appellant argues that the arresting authority in this case, the Montgomery County Police Department (MCPD), failed to provide him "with notice of his rights to consular notification and access" under the Vienna Convention and the Bilateral Agreement. After careful review, we disagree that Appellant's claim for relief was not cognizable under the PCRA.

---

[4] Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, T.I.A.S. No. 6820 ("Vienna Convention").

[5] Convention, with protocol of signature, signed at Washington June 6, 1951, T.I.A.S. No. 2494 (Sept. 7, 1952) ("Bilateral Agreement").

As noted above, Appellant did not file a Rule 1925(b) statement and, consequently, the PCRA court did not expressly address this claim as Appellant presents it in his brief. The PCRA court's opinion did reject Appellant's claims under the Vienna Convention and Bilateral Agreement because 1) Appellant failed to raise it at the time of his plea or during his direct appeal; and because 2) on the merits, Appellant made "misleading statements regarding his nationality and [due] to his own failure to request consultation with the British consulate[.]" PCRA Court Opinion (PCO), 4/8/2014, at 6. Thus, the PCRA court did not reject Appellant's treaty-related claims on the basis that they were not cognizable claims under the auspices of the PCRA.

Notably, Appellant's treaty-related arguments were not stand-alone claims for specific relief *under those agreements.* Indeed, Appellant did not appear to be seeking consular assistance so much as he was seeking to withdraw his guilty plea premised on the MCPD's failure to notify the British consulate on his behalf. The PCRA clearly encompasses claims that arise where a guilty plea is unlawfully induced. **See** 42 Pa.C.S. § 9543(a)(2)(iii) (stating relief is available under the PCRA where "the conviction or sentence resulted" from "[a] plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent").

Although Appellant contends that the Vienna Convention and the Bilateral Agreement provide him with a private right of action, he does not

provide this court with any meaningful analysis of existing authorities as to how that translates into a right to withdraw his guilty plea based on a violation of those authorities. Clearly, Appellant has a right to consular notification under those agreements. Thus, if consular notification was the only relief he were seeking in the Motion, there is a plausible argument that it was not properly characterized as a PCRA petition. However, Appellant did not even request consular notification in the Motion.

Additionally, the Supremacy Clause of the United States Constitution dictates that, "Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a violation of a binding international treaty by state authorities constitutes a violation of the United States Constitution's Supremacy clause. The PCRA encompasses such claims, as it provides the opportunity for relief where a conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States …." 42 Pa.C.S. § 9543(a)(2)(i). Moreover, this Court has previously addressed consular notification claims that arise under the Vienna Convention within the context of the PCRA without reservation regarding the PCRA's authority to do so. *See Commonweatlh v. Quaranibal*, 763 A.2d 941 (Pa. Super. 2000) (rejecting a consular notification claim arising under the Vienna Convention because the petitioner failed to raise the claim in a prior

- 8 -

proceeding and, alternatively, because the petitioner failed to demonstrate prejudice from the violation).

In sum, we conclude that there is no merit to Appellant's claim that the PCRA court erred when it construed the Motion as a PCRA petition. As presented, Appellant's treaty-based claim was cognizable under the PCRA.

\*\*\*

Next, Appellant claims that the Commonwealth breached the terms of his negotiated plea agreement. Appellant argues that the conditions placed on his eligibility for parole by the Department of Corrections ("DOC") were not made known to him when he negotiated his plea with the Commonwealth. Specifically, Appellant complains that prior to certifying him eligible for parole, the DOC requires him to complete 'mandatory' GED classes.[6] Appellant also claims that when he declined to participate in a voluntary "violence prevention forensic treatment" program run by the DOC, he was told that his decision to not participate would adversely affect his eligibility for parole. *Id.* Appellant construes these matters as "additional sentencing requirements" that were not made known to him at the time he negotiated a plea agreement with the Commonwealth. *Id.* at 19.

_____

[6] This is particularly irksome to Appellant because it is undisputed that he acquired advanced degrees "both in the United States and the United Kingdom[,]" including a Ph.D. Appellant's Brief, at 18.

The PCRA court found that "[s]ince there is no right to parole, the enforcement of mandatory education requirement is not a violation of [Appellant]'s rights." PCO, at 7 (citing ***Rogers v. Pa. Bd. of Prob. & Parole***, 724 A.2d 319, 321 (Pa. 1999)). Similar logic would apply to the non-mandatory violence prevention program. We agree with the PCRA court that Appellant is not entitled to withdraw his plea on this basis.

We also note that Appellant did not attempt to raise this claim in a post-sentence motion or on direct appeal. Section 9543(a)(3) of the PCRA provides that, to be eligible for relief under the statute, a petitioner must plead and prove that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). "An issue is waived if [a petitioner] could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state post[-]conviction proceeding." ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013) (quotation marks omitted); 42 Pa.C.S. § 9543(a)(3). In this case, however, Appellant was almost certainly not aware of the DOC's requirements and recommendations within the short period of time that he had to file a post-sentence motion or direct appeal from his sentence. Accordingly, we conclude that he could not have raised this claim in a prior proceeding, because the purported breach of the negotiated plea agreement does not appear to have been ascertainable at an earlier time.

Nevertheless, Appellant's claim lacks merit. We acknowledge that:

> The reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Missouri v. Frye*, –––  U.S. ––––, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) (internal citations omitted). Plea bargaining "is not some adjunct to the criminal justice system; it is the criminal justice system." *Id.* Accordingly, it is critical that plea agreements are enforced, "to avoid any possible perversion of the plea bargaining system." *Commonwealth v. Fruehan*, 384 Pa.Super. 156, 557 A.2d 1093, 1094 (1989) (internal citations omitted).

*Commonwealth v. Hainesworth*, 82 A.3d 444, 449 (Pa. Super. 2013), *appeal denied*, 95 A.3d 276 (Pa. 2014).

However, "[t]he granting and rescinding of parole are purely administrative functions." *Rivenbark v. Com., Pennsylvania Bd. of Prob. & Parole*, 501 A.2d 1110, 1112 (Pa. 1985). "Parole is a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside the prison walls; *it does not affect the sentence*." *Id.* at 1112 (emphasis added). With limited exceptions, "a defendant's lack of knowledge of collateral consequences to the entry of a guilty plea does not render a plea unknowing or involuntary." *Commowneatlh v. Brown*, 680 A.2d 884, 887 (Pa. Super. 1996).

One such exception to this collateral consequence doctrine was recognized in *Padilla v. Kentucky*, 559 U.S. 356 (2010), where the Supreme Court of the United States held that the risk of deportation is a collateral consequence of such gravity that counsel is required to advise a client who is contemplating entering a guilty plea that doing so could result

in the commencement of deportation proceedings. However, Appellant has not cited any existing exception that is applicable to his situation, and we do not believe that the DOC policies implicated in this case are of comparable gravity to the collateral consequences of the deportation issue addressed in **Padilla**. Accordingly, we conclude that Appellant's second claim lacks merit.

\*\*\*

Next, Appellant asserts that the Commonwealth failed to provide him with consular notification and access under the Vienna Convention and/or the Bilateral Agreement. Notably, in his brief, Appellant does not even assert what relief to which he is ostensibly entitled with respect to this claim. Presumably, however, in accordance with the Motion, Appellant wishes to use the violation of these treaties as the basis for the withdrawal of his guilty plea. In any event, we conclude that this claim has been waived due to Appellant's failure to raise it in a prior proceeding.

A similar claim was asserted in **Quaranibal**. Therein, the appellant, a citizen of El Salvador, argued that he was entitled to a new trial on the basis that he was not afforded his right to consular notification under the Vienna Convention. The **Quaranibal** Court rejected the claim, applying Section 9543(a)(3) of the PCRA, because "the right of consular notification, which by the terms of the Vienna Convention attaches upon arrest, could have been raised before trial, at trial, or on direct appeal. The issue was not raised at any of these points." **Quaranibal**, 763 A.2d at 944.

- 12 -

Appellant argues that he "cannot 'waive' or 'forfeit' [the] Commonwealth's obligation or duty under" the Vienna Convention and/or the Bilateral Agreement, "where [the] Commonwealth has an affirmative obligation under both compacts[.]" Appellant's Brief, at 25. We disagree. As the *Quaranibal* Court noted, "the United States Supreme Court has plainly stated that a treaty does not trump procedural rules." *Quaranibal*, 763 A.2d at 944 (citing *Breard v. Greene*, 523 U.S. 371 (1998)). In *Breard*, the Supreme Court of the United States opined, in its discussion of rights arising under the Vienna Convention, that "it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State." *Breard*, 523 U.S. at 375. Although the High Court was discussing a different rule, "that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in [federal] *habeas*," the Court's reasoning applies with equally force to the instant matter. *Id.* In Pennsylvania, the analogous procedural rule at issue in this case is Section 9543(a)(3) of the PCRA.

Thus, Appellant is not relieved of his own responsibility to claim a violation of his rights under the Vienna Convention within the framework of Pennsylvania's procedural rules merely because the obligation of consular notification rests with the Commonwealth. Similarly, the Commonwealth is also obliged not to conduct searches and seizures in violation of the Fourth Amendment to the United States Constitution. However, a defendant's

failure to raise such a claim in a suppression motion will also result in the waiver of that suppression claim during collateral review pursuant to Section 9543(a)(3).[7]  Appellant's rights, whether they arise under a treaty or under the Constitution, are subject to the same procedural rules, and those rules dictate that the party asserting a right must assert their claim in a timely manner.  Therefore, we conclude that Appellant's third claim is waived.

\*\*\*

For Appellant's fourth claim, he asserts that his trial counsel was ineffective for "failing to conduct a full investigation of his case and background[,]" and for "failing to advise Appellant of [the] deportation consequences of pleading guilty."  Appellant's Brief, at 26.  It is apparent from our review of the record that this claim has been waived.

Our appellate rules dictate that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302(a).  Instantly, in the Motion, Appellant neither raised this claim nor any other ineffective assistance of counsel issue.  Furthermore, Appellant never sought to amend the Motion to include such a claim.  Accordingly, we are constrained to find this claim has been waived pursuant to Rule 302(a).

---

[7] The exception to this rule is where the claim is couched in terms of trial counsel's ineffectiveness.  However, "ineffectiveness claims are distinct from those [underlying] claims that are raised on direct appeal" because "[t]he former claims challenge the adequacy of representation rather than the conviction of the defendant."  *Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005).

- 14 -

*** 

Finally, Appellant asserts an ineffectiveness claim concerning PCRA counsel's stewardship of the Motion. We decline to find this claim waived due to Appellant's failure to raise it in the PCRA court.[8] Nevertheless, the claim lacks merit.

We review ineffective assistance of counsel claims under the following standard:

> We begin with the presumption that counsel rendered effective assistance. To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. ***Strickland v. Washington***, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the ***Strickland*** Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the

---

[8] Typically, the first opportunity to challenge PCRA counsel's ineffectiveness, when that attorney has filed a ***Turner***/***Finley*** no-merit letter, occurs in response to a PCRA court's reliance on a no-merit letter in a Pa.R.Crim.P. 907 notice. ***See Commonwealth v. Pitts***, 981 A.2d 875, 880 n.4 (Pa. 2009). As noted previously, in this case, the PCRA court did not officially accept Attorney Carluccio's ***Turner***/***Finley*** letter, and permit him to withdrawal, until after Appellant was ordered to file a Rule 1925(b) statement. Also noted previously, we decline to find ***Lord***/***Butler*** waiver based on Appellant's failure to file a Rule 1925(b) Statement in the unique circumstances of this case. Moreover, Appellant did attempt to respond to the PCRA Court's Rule 907 notice, but was denied his request for an extension of time. Given the confluence of these circumstances, it would be unjust to find waiver. Appellant's brief was the first practical opportunity he had to challenge PCRA counsel's stewardship of the Motion.

> proceeding would have been different absent such error. ***Commonwealth v. Pierce***, 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

***Commonwealth v. Dennis***, 17 A.3d 297, 301 (Pa. 2011) (some internal citations omitted). "A claim of ineffectiveness will be denied if the defendant's evidence fails to meet any one of these prongs." ***Commonwealth v. Hanible***, 30 A.3d 426, 439 (Pa. 2011).

Appellant contends that Attorney Carluccio was ineffective for filing a ***Turner/Finely*** no-merit letter with respect to Appellant's claim that his plea agreement had been breached by the DOC's GED education requirement. As discussed above, we found that this underlying claim lacked merit, because the DOC policies regarding the requirements for parole were collateral consequences of Appellant's conviction and sentence, not bargained-for terms of his plea agreement. Therefore, Appellant has failed to establish the first prong of his ineffectiveness claim. Consequently, his fifth claim lacks merit.

Order ***affirmed***.

Judge Donohue joins this opinion.

Judge Mundy files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/14/2015</u>