J-S68034-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID STEPHEN SULLIVAN, | : | |
| | : | |
| Appellant | : | No. 356 WDA 2016 |

Appeal from the Order September 29, 2015
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002944-2005

BEFORE:    SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 17, 2016**

David Stephen Sullivan (Appellant) appeals *nunc pro tunc* from the order which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  This matter returns to us following remand for the PCRA court to conduct an evidentiary hearing and render findings and conclusions on Appellant's claim that his trial counsel was ineffective for failing to call Appellant's son, D.S., as a witness at trial.[1]  Upon review, we affirm.

---

[1] "D.S. was ten years old at the time of trial." ***Commonwealth v. Sullivan***, 120 A.3d 370 (Pa. Super. filed February 5, 2015) (unpublished memorandum at 5 n.4).

*Retired Senior Judge assigned to the Superior Court.

Appellant was convicted by a jury of various offenses stemming from the repeated sexual abuse of his minor stepdaughter, M.B.[2] Appellant was sentenced to an aggregate term of 18 to 36 years of incarceration. This Court affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Sullivan*, 987 A.2d 825 (Pa. Super. filed October 27, 2009) (unpublished memorandum), *appeal denied*, 8 A.3d 345 (Pa. 2010). Appellant thereafter filed a PCRA petition and, following the filing of two amended petitions, the PCRA court dismissed the petition. Appellant appealed, and on February 5, 2015, this Court affirmed in part, vacated in part, and remanded the case. *Commonwealth v. Sullivan*, 120 A.3d 370 (Pa. Super. filed February 5, 2015) (unpublished memorandum). Specifically, this Court held that the dismissal was premature and remanded for the PCRA court to make findings as to

---

[2] "M.B. is autistic and suffers from attention deficit hyperactivity disorder and depression." *Commonwealth v. Sullivan*, 987 A.2d 825 (Pa. Super. filed October 27, 2009) (unpublished memorandum at 2). With respect to the abuse, M.B. testified that Appellant touched M.B.'s "boobs, vagina, and butt;" M.B. touched Appellant's "nipples, penis, and butt;" they both engaged in oral sex, during which Appellant used a strawberry flavored gel, telling M.B. it would "taste better;" and Appellant showed M.B. magazines depicting couples engaging in sexual intercourse, using the magazines and pornographic movies to persuade M.B. "that sex with a parent was a proper and normal activity." *Id.* at 3-5. M.B. also testified that Appellant "would create a 'club house' by draping a blanket over a pool table which was located in the basement of his mother's home .... to engage in sexual activities;" Appellant took photographs of M.B. in different sexual positions; Appellant asked M.B. to touch and lick a fake penis; and Appellant asked M.B. to play a sexual dice game stored in a purple bag in the basement. *Id.* at 4-5.

counsel's basis for not calling D.S. as a witness and whether Appellant suffered prejudice. *Id.* at 7.

The evidentiary hearing was held on September 3, 2015, following which the PCRA court denied relief. Appellant untimely filed an appeal, which this Court quashed *sua sponte*. Thereafter, Appellant requested and was granted the right to file an appeal *nunc pro tunc*. This appeal followed.

Appellant presents one issue for our consideration:

> Where trial counsel failed to call an exculpatory witness at trial who was known to trial counsel but never interviewed, was available and willing to testify favorably for Appellant, and whose testimony had a reasonable probability of changing the outcome at trial, did the [PCRA] court err in finding the decision not to call the witness objectively reasonable without a basis in the record and contrary to law.

Appellant's Brief at 1 (unnecessary capitalization omitted).

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record. However, this Court reviews the PCRA court's legal conclusions *de novo.*

**Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (internal quotation marks and citations omitted).

As Appellant's claim pertains to the alleged ineffective assistance of his trial counsel, we further observe the following.

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or

sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ...

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal quotation marks and citations omitted). We further observe the following with respect to the reasonable-basis and prejudice prongs of the ineffectiveness test.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

- 4 -

*Commonwealth v. Pander*, 100 A.3d 626, 631 (Pa. Super. 2014) (internal

quotation marks and citations omitted).

Regarding ineffective assistance of counsel claims based on a failure to

investigate and call a witness, this Court has explained that

> [n]eglecting to call a witness differs from failing to investigate a witness in a subtle but important way. The failure to investigate presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. Importantly, a petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.
>
> In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Pander*, 100 A.3d at 638-39 (internal quotation marks and citations

omitted). *See also Commonwealth v. Michaud*, 70 A.3d 862, 868 (Pa.

Super. 2013) ("Thus, trial counsel will not be found ineffective for failing to

investigate or call a witness unless there is some showing by the appellant

that the witness's testimony would have been helpful to the defense.").

Appellant argues that D.S.'s testimony would have been helpful, given

the lack of evidence corroborating M.B.'s testimony as to the abuse, in

attacking M.B.'s credibility and establishing Appellant's defense that M.B.

was leveling false allegations against Appellant in anger as a result of her learning that he was not her biological father. Appellant's Brief at 22-25. Appellant argues that D.S. was the only other witness who could testify specifically that M.B. was lying about the abuse. *Id.* at 22, 25, 27. Appellant points to D.S.'s testimony offered at the PCRA hearing that (1) he was around the house with Appellant and M.B. "all the time" and never saw anything "going on" between them, (2) on two occasions he had a conversation with M.B. during which she admitted she had lied about the allegations, and (3) he knew M.B. was lying because D.S. was present and never apart from M.B. while at home during the times M.B. said the abuse took place. *Id.* at 22-24. Appellant contends that counsel did not even interview D.S., thereby rendering his bases for failing to call him unreasonable, and that Appellant was precluded from presenting "a witness to essentially corroborate his own testimony that the allegations were false, and more importantly, the complaining witness lied when she made them." *Id.* at 21-22, 25-26, 28.

At the PCRA hearing, D.S. testified that he was aware of the circumstances that led to Appellant's being incarcerated, including "accusations that [M.B.] had made regarding inappropriate sexual contact." N.T., 9/3/2015, at 5. D.S. knew that the incidents were alleged to have occurred in the basement of the house, and confirmed that he and his sister were often down there. *Id.* at 16. D.S. indicated that, during that time,

Appellant was responsible for him and his grandmother was at work. *Id.* at 18. D.S. testified to a brief description of the basement and the "pool table that had been mentioned as where the incidents had taken place," stating it was "very small" with storage containers filled with toys underneath and "wood that came down was like with [*sic*] structures to keep it up," such that the containers were hard to remove at times. *Id.* at 8, 16-17.

D.S. also explained that when Appellant was first arrested, a representative from Children, Youth, and Families asked D.S. if he "ever saw anything going on" and D.S. told the representative he "did not." *Id.* at 7. The representative asked D.S. "how long -- how often [D.S.] was around the house with [Appellant] and [M.B.]," and D.S. told him he was "there all the time." *Id.* at 7-8. On cross-examination, D.S. confirmed that he was present during all the time of when the incidents were alleged to have occurred and that he "did not witness any act." *Id.* at 29-30, 32.

D.S. also recalled having a conversation with M.B. on two occasions, "[o]ne in March of 2005 and one in May of 2005." *Id.* at 9. As for the March 2005 conversation, D.S. stated as follows:

> [D.S.]: [M.B.] told me she wished things could go back to the way they were. And I told her -- I asked her, "Why did you lie?" She said she wished she didn't. I told her she needs to tell somebody and tell the truth. And she responded by saying, "I need to go talk to nana," and she it [*sic*] ran off."
>
> [Appellant's Counsel]: Okay. … You said that your sister told you that she wanted things to go back to the way they were. What did you understand that to mean, sir?

[D.S.]  Back to living with my dad and my grandmother after my parents divorced.

\*\*\*

[Appellant's Counsel]:  Let me go back to conversations that you had with your sister.  You said or she told you that she wished things had gone back to the way they were and you said why did you lie.  Tell me why that was your response, sir.

[D.S.]  Because I knew she lied.  She lied all the time and I knew she lied about this because I was there.  Where she said the allegations took place.  All the time.

[Appellant's Counsel]:  There was never a time when you weren't with your sister?

[D.S.]:  Not at home.

*Id.* at 9-10, 12-13.  D.S. further testified that the conversations in March 2005 and May 2005 were consistent.  *Id.* at 20.  D.S. stated that, with respect to the conversation in May, he told M.B. that "she needs to tell the truth.  And she responded with 'It is too late for that now.'  After that, she run ran [*sic*] away from the house, and [D.S] didn't have a chance to talk to her after that."  *Id.* at 20-21.

Although D.S. believed that, when he had the conversation with M.B., M.B. was not telling the truth, when asked if she told him that, D.S. said no. *Id.* at 20.  When asked if he was aware if M.B. told anyone that she had made up an allegation, D.S. responded no. *Id.* at 13.  D.S. also explained that he told several adults what M.B. had expressed to him, including his

grandmother, his mother, his aunt, and his uncle, and that his mother's side of the family did not believe him. *Id.* at 13-14, 21.

D.S. testified that, although he knew the allegations against Appellant, he was not present at Appellant's trial, did not read the trial transcript about what occurred, and had no knowledge about the actual testimony and facts that came out at trial. *Id.* at 5, 23-24, 32. D.S. stated that he first learned of the allegations through his maternal grandparents, but he could not "recall specifics" about what they said and, when asked if he could state "anything else about [his] knowledge of the allegations against [his] father," D.S. said no. *Id.* at 30, 32. D.S. also stated that he had never discussed the case with anyone but Appellant's PCRA attorney. *Id.* at 23-25.

D.S. said he had a normal family relationship with his sister prior to the allegations being made against Appellant, but that it ended about a year after the trial and he has not spoken with her since. *Id.* at 19, 23, 28. D.S. stated that he currently has a relationship with Appellant and visits him in prison, that they wrote letters to each other, and that he misses his dad and hopes that he comes home. *Id.* at 27-28.

In addressing Appellant's claim on appeal, the PCRA court concluded that counsel had a reasonable basis for failing to call D.S. as a witness at trial. At the hearing, the PCRA court explained as follows, in relevant part:

> [Counsel] did present a reasonable basis for not calling the son in this case and he gave good reasons. I'll present them. He said that because of the age of the child, he did not want to

alienate the jury. He was not sure how consistent the child's testimony would be. He would be concerned about [the Commonwealth's] often-aggressive cross-examination of defense witnesses and he talked about concerns.

N.T., 9/3/2015, at 75. In its subsequent opinion issued pursuant to Pa.R.A.P. 1925(a), the PCRA court further found that counsel

testified that it was his practice to speak to all family members and he did speak with [D.S.], though he did not have an independent recollection of the conversation. He was testified that he did not want to put [D.S.] on the stand because he believed child witnesses could be unpredictable. He was particularly worried because [Appellant] had initially made a statement to the police that the allegations were "not all true[,"] and thus he felt [D.S.] would be vulnerable to cross-examination on which of the allegations were true. [Counsel] was familiar with the prosecutor, … and believed her to be a good prosecutor who was particularly skilled with child witnesses and it was his opinion that she may have been able to elicit unexpected information from [D.S.] on cross-examination. Moreover, [counsel] was concerned in general about how a jury would react to a father subjecting his young son to testimony in general and also in having him testify against his sister. Finally, [counsel] testified that he discussed all matters of strategy and witnesses with [Appellant], including whether to have [D.S.] testify, and [Appellant] agreed with the strategy at the time.

PCRA Court Opinion, 5/4/2016, at 6-7 (citations and emphasis omitted).

The crux of Appellant's argument on appeal is that, notwithstanding the bases offered by counsel for not calling D.S., counsel's inaction cannot be deemed reasonable because counsel did not even speak to D.S. Appellant's Brief at 21-22, 25-26, 28; *see also* Appellant's Reply Brief at 1-5. However, as stated above, the PCRA court found that counsel did speak with D.S. Viewing the record in the light most favorable to the

Commonwealth as the prevailing party below, the record supports the PCRA court's finding. Specifically, though counsel testified that he did not have a specific recollection of speaking with D.S., counsel also stated that he "believe[d he] did interview" D.S., that "as a practice, that is something [he] would have done," and that he did talk to him about what he would testify to, but not about whether he was going to testify. *See* N.T., 9/3/2015, at 37, 39-41, 46-47, 56-57, 59-60.

Moreover, the record supports the PCRA court's findings with respect to the reasons offered by counsel for not calling D.S. at trial. Specifically, counsel stated that he was concerned that putting a 10 or 11 year old child on the stand can alienate the jury and that he was concerned about how D.S. would respond to the prosecutor's cross-examination, given that the prosecutor had significant experience in dealing with child witnesses. *Id.* at 37-38, 40, 52, 55. Moreover, counsel explained that, when police read Appellant the affidavit of probable cause with respect to the charges, Appellant responded, "That's not all true," and counsel was concerned that the prosecutor would ask D.S. what parts were true in his opinion. *Id.* at 38. Counsel also testified to how the jury might view Appellant in light of calling his own son to testify against his sister, as it "could be interpreted by some as a desperate" and "non-caring parental act." *Id.* at 52-53. Further, counsel testified that he discussed D.S.'s testifying with Appellant and that Appellant never expressed any dissatisfaction with the decisions he and

- 11 -

Appellant were making, particularly with regard to strategy. *Id.* at 39, 46-47, 54-55, 57, 59. In light of the foregoing, the PCRA court did not err or abuse its discretion in concluding that counsel had a reasonable basis for not calling D.S. as a witness. *Compare Commonwealth v. Matias*, 63 A.3d 807, 809-12 (Pa. Super. 2013) (affirming PCRA court's conclusion that counsel was ineffective for failing to call a child-witness where counsel did not interview her and she would have contradicted victim's testimony that she was an eyewitness to the sexual abuse at issue).

Moreover, we conclude that Appellant has failed to establish prejudice. At the conclusion of the hearing, the PCRA court stated the following, in relevant part, on the record.

> I think first I'm going to address the credibility of [D.S.], [Appellant's] son. I feel that even today, there was an issue of credibility. For instance, his description of the pool table, which I remember photographs of, was not accurate and it was shown that there was space under the pool table.
>
> He said that he was never, ever separated from [M.B.], which would mean to me that they went to bed at the same time, they got up at the same time, they had their nightmares at the same time, they bathed and went to the bathroom at the same time, and this certainly sheds some question mark on his credibility.
>
> He did testify that [M.B.] said that she wished things would go back to where they were and that she lied. But there is no testimony about what she lied about. And I would imagine that a child in this situation would like things to go back. There are several viable interpretations. One could be just that they would go back to the way it was before [Appellant] was molesting her.

*Id.* at 74-75.

Upon review of the foregoing, it is clear that the PCRA court did not find that D.S.'s testimony was credible and that, to the extent that it was, its absence was not "so prejudicial as to have denied [Appellant] a fair trial." *Pander*, 100 A.3d at 639. In this regard, Appellant, citing *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009), argues that "[i]t is not for the [PCRA c]ourt to decide if the witness would have been found credible and would necessarily have resulted in an acquittal. The jury was robbed of testimony that was exculpatory and it was up to the jury to decide whether to believe [D.S.] or not. If believed, there is a reasonable probability the outcome would have been different." Appellant's Brief at 28 (citation omitted); *see also* Appellant's Reply Brief at 7.

In *Johnson*, the PCRA court concluded that Johnson's trial counsel was ineffective for failing to investigate and call certain fact witnesses at trial. *Johnson*, 966 A.2d at 534. The PCRA court concluded that the failure was prejudicial to Johnson, but in so doing, it declined to render credibility determinations with respect to the witnesses, explaining that task belonged to the jury. *Id.* at 535. Our Supreme Court held that the PCRA court's conclusion was in error, explaining:

> A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone.

***

- 13 -

> This Court has made clear that, in cases where the PCRA court declined to hold a hearing, and where an assessment of witness testimony was essential to a petitioner's ineffectiveness claims, the PCRA court must make specific credibility determinations. When a PCRA hearing is held, and the PCRA court makes findings of fact, we expect the PCRA court to make necessary credibility determinations.

*Johnson*, 966 A.2d at 539-40 (citations and footnote omitted).

Pursuant to *Johnson*, the PCRA court correctly rendered a credibility determination with respect to D.S.'s testimony. A review of the court's rationale as it relates to D.S.'s credibility reveals that it determined that "the nature and quality" of his testimony was not "such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." *Johnson*, 966 A.2d at 542. Viewing the evidence in the light most favorable to the Commonwealth, we discern no abuse of discretion or error of law in this regard.

Because Appellant has failed to establish that he is entitled to relief on his ineffectiveness claim, we affirm the order of the PCRA court.[3]

Order affirmed.

---

[3] To the extent our rationale differs from that of the trial court, we note that "[t]his Court may affirm a PCRA court's decision on any grounds if the record supports it." *Commonwealth v. Oliver*, 128 A.3d 1275, 1279 (Pa. Super. 2015) (quoting *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/17/2016</u>