J-A25014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EFRAIN GUADIONEX HIDALGO, JR. | : | |
| | : | |
| Appellant | : | No. 122 WDA 2021 |

Appeal from the PCRA Order Entered December 23, 2020,
in the Court of Common Pleas of Blair County,
Criminal Division at No(s): CP-07-CR-0000094-2000.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: DECEMBER 21, 2021**

Efrain Guadionex Hidalgo, Jr., appeals from the order denying as untimely his serial petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

Hidalgo's convictions result from his being the head of a heroin distribution enterprise that brought heroin from Buffalo, New York, into Blair County.  This Court has summarized the additional facts and partial procedural history as follows:

> Hidalgo was convicted, following a jury trial, of five counts of possession with intent to deliver (heroin), criminal conspiracy, dealing in proceeds of unlawful activities, corrupt organizations and corrupt organizations (conspiracy).  On September 26, 2000, Hidalgo was sentenced to an aggregate term of 60-150 years of

_____

[*] Retired Senior Judge assigned to the Superior Court.

imprisonment. The jury did not render a decision regarding the amount of heroin Hidalgo possessed.

On October 4, 2000, Hidalgo filed a motion for reconsideration/modification of sentence, which was denied without a hearing. He appealed that decision to our Court. On July 23, 2001, this Court affirmed Hidalgo's judgment of sentence. Hidalgo filed a petition for allowance of appeal to the Pennsylvania Supreme Court which was denied on January 24, 2002. On June 10, 2002, Hidalgo filed a *pro se* PCRA petition, which was denied on April 13, 2006. After Hidalgo challenged the denial of his petition in a collateral appeal, our Court denied him relief on April 11, 2007. Hidalgo filed a petition for allowance of appeal from that decision, which was denied by our Supreme Court on August 20, 2008.

On October 17, 2011, Hidalgo filed [a] *pro se* "Motion to Vacate Illegal Sentence[.]" The trial court determined that the matter was properly captioned as a PCRA petition and appointed counsel to represent Hidalgo. Counsel filed an amended motion on March 28, 2012. The trial court denied that motion on July 5, 2013[.]

*Commonwealth v. Hidalgo*, 108 A.3d 115 (Pa. Super. 2014), non-precedential decision at 1-3 (footnotes omitted).

Hidalgo appealed to this Court. On October 15, 2014, we found that the court below properly treated Hidalgo's filing as an untimely PCRA petition. *Id.* at 5-6. Additionally, we noted that, because he did not allege in his petition or on appeal any exceptions to the PCRA's time bar, the trial court lacked jurisdiction to consider the merits of the petition and properly dismissed it. *Id.* at 6. We therefore affirmed the order denying Hidalgo post-conviction relief. *Id.* Our Supreme Court denied Hidalgo's petition for allowance of appeal on February 11, 2015. *Commonwealth v. Hidalgo*, 109 A.3d 678 (Pa. 2015).

On August 6, 2015, Hidalgo filed a counseled PCRA petition. Hidalgo filed a *pro se* supplemental/amendment to the counseled petition on August 27, 2018. Thereafter, new counsel filed a motion for discovery on October 3, 2019. This motion sought disclosure of telephone intercepts between Hidalgo and one of the Commonwealth's informants.

Hidalgo filed an amended petition on June 3, 2020. On October 8, 2020, the parties presented oral argument regarding the timeliness of Hidalgo's serial PCRA petition. By order entered December 23, 2020, the PCRA court denied the petition. This appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Hidalgo raises the following issues on appeal:

1. Whether the [PCRA court] erred by dismissing as untimely the petition for relief under the PCRA as to the claim of [Hidalgo], who is a member of the Mohawk Nation of the Six Nations Confederation, grounded on a Native American treaty, 7 Stat. 46, at Article VII, and [Hidalgo's] rights arising thereunder, inasmuch as [Hidalgo's] rights arising under that treaty were violated in that no complaint by the Commonwealth to the principal chiefs of the Six Nations was made before initiation of the criminal action against [Hidalgo], and the rights, privileges and immunities arising [from] that Native American treaty are not subject to the statute of limitations at 42 Pa.C.S. § 9545(b), so rendering the treaty claim timely?

2. Whether the [PCRA court] erred by dismissing as untimely the petition for relief under the PCRA as to the claim of [Hidalgo], which was based on the Commonwealth's refusal to disclose the intercepts of telephone calls between an informant and [Hidalgo] and any transcriptions of those intercepts, which disclosure was mandated and may have contained exculpatory

matter, and the refusal to disclose was meritless, willful and in bad faith and has been ongoing, rendering the claim at issue subject to the timeliness exception for governmental interference at 42 Pa.C.S. § 9545(b)(1)(i) and so timely?

Hidalgo's Brief at 4-5 (emphasis omitted).

We first determine whether Hidalgo's serial PCRA petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional. **Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition is met.

The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." **Commonwealth v. Brandon**, 51 A.3d 231, 233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). In addition, exceptions to the PCRA's time bar must be pled in the petition and may not be raised for the first time on appeal. **Commonwealth v. Burton**, 936 A.2d 521, 525 (Pa. Super. 2007); **see also** Pa.R.A.P. 302(a) (providing that issues not raised before the lower court are waived and cannot be raised for the first time on appeal).

- 4 -

Finally, if a PCRA petition is untimely and the petitioner has not pled and proven an exception "neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." **Commonwealth v. Derrickson**, 923 A.2d 466, 468 (Pa. Super. 2007) (citation omitted).

Here, "Hidalgo's judgment of sentence became final on April 24, 2002, when the time expired to file a writ of certiorari with the United States Supreme Court following the denial of Hidalgo's petition for allowance of appeal. 42 Pa.C.S.A. § 9545(b)(3); Sup. Ct. R. 13." **Hidalgo**, non-precedential decision at 5-6. Therefore, Hidalgo had until April 24, 2003, to file a timely PCRA petition. Because Hidalgo filed the PCRA petition at issue in 2015, it is untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. **See Hernandez**, **supra**.

In his first issue, Hidalgo asserts that the PCRA's jurisdictional time-bar "does not apply to stop his PCRA claim for violating the treaty requirement because no state statute of limitations can impair a right arising under a Native American treaty absent a specific congressional enactment to the contrary." Hidalgo's Brief at 15.

The PCRA court found no merit to this claim because it found Hidalgo had no standing to enforce the treaty in his criminal prosecution. The court first discussed how a court should interpret an international treaty:

In general, treaties do not create privately enforceable rights. **See Mora v. New York**, 524 F.3d 183, 201 & n, 25 (2d Cir. 2008) (collecting cases from ten circuits holding that there is a presumption that treaties do not create privately enforceable rights in the absence of express language to the contrary). Express language in a treaty creating private rights can overcome this presumption. **See Mora**, 524 F.3d at 188. International treaties establish rights and obligations between States, and generally not between States and individuals.

Furthermore, the United States Supreme Court has plainly stated that, while the courts should give "respectful consideration to the interpretation of an international treaty . . . absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in the state." **Commonwealth v. Quaranibal**, 763 A.2d 941 (Pa. Super.2000), *citing* **Berard v. Greene**, 523 U.S. 371, 375, 118 S.Ct. 1352, 1354, 140 L.Ed.2d. 529 (1998).

Indeed, the Supreme Court has specifically instructed courts to exercise "great caution" when considering private remedies for international law violations because of the risk of "impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." **Sosa v. Alvarez-Machain**, 542 U.S. 692, 727-728, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). For these reasons, when interpreting treaties, we generally look for a clear statement of the intent of the treaty drafters.

PCRA Court Opinion, 3/2/21, at 8-9.

The PCRA court then applied the above standards to the treaties upon which Hidalgo relied:

Here, there is no express language in either treaty creating a private right in an individual to seek remedy for breach. Additionally, [the PCRA court] does not read the Stanwix and Harmar Treaties to limit the United States authority to prosecute members of the Six Nations for crimes committed within the jurisdiction of the United States. We are unable to find any language limiting the

jurisdiction of either the United States, or the Six Nations to the crimes enumerated in "Separate Article" of the Harmar Treaty. As stated above, in the absence of express language in the treating manifesting the drafters' intent for the list of included crimes to be exhaustive, we cannot find said list to limit the United States['] jurisdiction. We must, as the United States Supreme Court explained in **Sosa**, exercise "great caution" or risk "impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." **Sosa**, **supra**.

PCRA Court Opinion, 3/2/21, at 8.

Finally, the PCRA court determined that, even if it did not consider the standing issue, Hidalgo's jurisdictional claim lacked merit:

Were we to reach [Hidalgo's] claim of error, we would conclude that it is without merit. [Hidalgo's] status as an enrolled member of an Indian Nation does not exempt him from the jurisdiction of state courts for crimes committed outside reservation lands. **See Nevada v. Hicks**, 533 U.S. 353, 362 (2001) (stating that it is well settled that states have criminal jurisdiction over reservation resides for crimes committed off the reservation) (citing **Mescalero Apache Tribe v. Jones**, 411 U.S. 145, 148-149, (1973)). [Hidalgo's] heroin trafficking occurred in and around Blair County[,] Pennsylvania, which is outside any reservation territory. Thus, Blair County had criminal jurisdiction in this matter.

For the abovementioned reasons, [Hidalgo] is without standing to assert a claim based on the Stanwix Treaty and the Harmar Treaty. Even if [Hidalgo] did have a cognizable right under these treaties, the procedural rules of the forum state govern implementation of the treaty.

**Id.** at 10. Our review of pertinent case law and the certified record supports the PCRA court's conclusions.

In arguing that the existence of the treaties[1] preempts the PCRA's time bar, Hidalgo principally relies upon the U.S. Supreme Court's decision in *Oneida County, New York v. Oneida Indian Nation of New York State*, 105 S.Ct. 1245 (1985). *Oneida* involved common law actions brought by Native Americans to enforce property rights. As part of its discussion, the High Court, recognizing that there was no federal statute of limitations governing federal common-law actions by Native Americans to enforce property rights, held that the borrowing of state limitations period (such as adverse possession and laches) would be inconsistent with the federal police against the application of state statutes of limitations "with respect to Indian land claims." *Oneida*, 105 S.Ct. at 1255. Hidalgo cites no authority that extends this holding in a criminal or post-conviction context.

Additionally, Hidalgo cites this Court's decision in *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015), for the proposition that international treaty obligations are cognizable under the PCRA. *See* Hidalgo's Brief at 22. Hidalgo does not explain how, even though his claim is cognizable under the PCRA, the time-bar of the same statute does not apply. Thus, because Hidalgo has not convinced us that the treaty at issue vitiates the PCRA's time bar restriction, his first issue fails.

_____

[1] In his petition, Hidalgo relied upon the Fort Stanwix Treaty of 1784, and the Fort Harmar Treaty of 1789. In his brief, Hidalgo refers to the 1794 Treaty of Canandaigua. *See* Hidalgo's Brief at 17 n.3.

In his second issue, Hidalgo argues that, even if the PCRA applies, he had pled and proved the "governmental interference" exception because the Commonwealth failed to produce requested telephone intercepts in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Although a *Brady* violation might fall within the governmental interference exception to the PCRA's time bar, the statute nevertheless requires a petitioner to plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence. No *Brady* violation occurs when the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence. *Commonwealth v. Williams*, 105 A.3d 1234 (Pa. Super. 2014).

Here, by his own admission, Hidalgo cannot establish due diligence. *See* Hidalgo's Brief at 13 (stating that trial counsel had asked for the intercepts but that first PCRA counsel abandoned the claim in the subsequently amended PCRA filed in 2003). Indeed, the PCRA court found that it "need not address [Hidalgo's] government interference claim because it was not brought within one year of the date on which the claim could have been brought." PCRA Court Opinion, 3/2/21, at 6. We agree.

Our review of the record does not support Hidalgo's claim that "government officials have blocked disclosure of exculpatory materials and have continued to do so, rending the governmental interference unceasing and ongoing." Hidalgo's Brief at 23. Hidalgo knew about these recordings

since 2000, as well as the Commonwealth's alleged noncompliance, but did not attempt to litigate the matter over the next fifteen years. Our review of the record does not support Hidalgo's assertion that he was "diligent and persistent in seeking the intercepts and any transcripts of them." Hidalgo's Brief at 29. Thus, Hidalgo's **Brady** claim does not establish an exception to the PCRA's time bar. **See**, **e.g.**, **Commonwealth v. Stokes**, 959 A.2d 306, 311, (Pa. 2008) (holding **Brady** claim of suppression of information in government files could not negate PCRA's time bar; such reasoning would permit a PCRA petition to be filed at any time as long as the claim was couched in terms of a **Brady** violation).

In sum, Hidalgo's serial petition is subject to the time constraints of the PCRA. Moreover, our review of the record supports the PCRA court's conclusion that it lacked jurisdiction to consider the serial petition because it was untimely, and Hidalgo had not established a time-bar exception. We therefore affirm the order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021

- 10 -