J-S25018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HALIM RAYSHAWN BOWEN | : | |
| | : | |
| Appellant | : | No. 1604 MDA 2019 |

Appeal from the PCRA Order Entered September 24, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000098-2014

BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 30, 2020**

Appellant, Halim Rayshawn Bowen, appeals from the Order entered September 24, 2019, which denied and dismissed his Petition for collateral relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46.  In addition, Appellant's appointed counsel, Aaron N. Holt, Esq., has filed an Application to Withdraw as Counsel and an accompanying **Turner**/**Finley** "no merit" Brief.[1]  We grant counsel's Application.  Further, after careful review, we adopt in part the PCRA court's September 24, 2019 Opinion as our own and in all respects affirm the denial of relief.

In December 2014, a jury convicted Appellant of First-Degree Murder,[2] based on evidence that he intentionally killed the victim by gunshot to the

---

[1] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[2] 18 Pa.C.S. § 2502(a).

back during an altercation at a bar. The trial court sentenced Appellant to life imprisonment without the possibility of parole. Appellant timely appealed, and this Court affirmed the Judgment of Sentence. *Commonwealth v. Bowen*, 678 MDA 2015 at *1 (Pa. Super. filed March 29, 2016). The Pennsylvania Supreme Court denied Appellant's Petition for further review. *Commonwealth v. Bowen*, 158 A.3d 81 (Pa. 2016).

In October 2017, Appellant timely and *pro se* filed a Petition for collateral relief, in relevant part challenging the constitutionality of his Murder charge, the legality of his sentence, and asserting ineffective assistance of trial counsel. *Pro Se* Petition, 10/3/17. The PCRA court appointed counsel, who filed an amended Petition asserting two additional claims of ineffective assistance of trial counsel. Amended PCRA Petition, 1/24/18. In July 2018, the PCRA court held an evidentiary hearing but deferred a final decision on the merits. *See* PCRA Ct. Order, 7/23/18.[3]

In April 2019, approximately nine months after his evidentiary hearing but prior to any decision by the PCRA court, Appellant sought to amend his claims, further asserting that the Commonwealth had presented perjured testimony at his trial. Motion to Open Record and Amend PCRA Petition, 4/16/19 ("Motion to Amend"). The PCRA court determined that Appellant sought to present a novel claim, rather than one supplementary to those

---

[3] At the evidentiary hearing, the PCRA court granted leave for Appellant to proceed on five claims: one challenging the constitutionality of his Murder charge, one challenging the legality of his sentence, and three asserting ineffective assistance of counsel. N.T. PCRA, 7/23/18, at 4.

- 2 -

claims raised in his *pro se* or amended Petitions, and therefore denied Appellant's Motion to Amend as untimely filed. PCRA Ct. Op. and Order, 7/19/19.

In September 2019, the PCRA court denied Appellant relief. PCRA Ct. Op. and Order, 9/24/19. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The PCRA court issued a responsive Pa.R.A.P. 1925(a) Statement, incorporating its prior analysis.

In this Court, Attorney Holt filed a **Turner/Finley** Brief, raising the following issues:

1. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] was not entitled to relief on his claim that the laws that he was sentenced under were not properly enacted[;]

2. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] was not entitled to relief on his claim that the Constitution was violated when he was sentenced under the wrong section of the Criminal Code[;]

3. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] was not entitled to relief on his claim that [t]rial [c]ounsel was ineffective for failing to object to the Commonwealth's closing argument[;]

4. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] was not entitled to relief on his claim that [t]rial [c]ounsel was ineffective for failing to request a jury instruction regarding [Appellant's] alleged gang membership[;]

5. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] was not entitled to relief on his claim that [t]rial [c]ounsel was ineffective for failing to present video evidence of an alternate angle of the shooting[; and]

6. [Whether] the [PCRA] [c]ourt err[ed] when it held that [Appellant] could not amend his PCRA Petition to include a new issue not raised in his [prior filings.]

- 3 -

*Turner*/*Finley* Br. at 11-13 (internal footnote and suggested answers omitted). In addition, counsel has filed an Application to Withdraw as Counsel.

### *Counsel's Application to Withdraw*

Before we consider Appellant's issues, we must review counsel's request to withdraw. Pursuant to *Turner*/*Finley*, independent review of the record by competent counsel is necessary before the Court shall permit withdrawal on collateral appeal. *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009). Counsel is then required to submit a "no merit" letter (1) detailing the nature and extent of his or her review; (2) listing each issue the petitioner wishes to have raised on review; and (3) explaining why the petitioner's issues are meritless. *Id.* The Court then conducts its own independent review of the record to determine if the petition is meritless. *Id.* Counsel must also send to the petitioner: "(1) a copy of the 'no merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007) (citation omitted).

Our review of the record discloses that Attorney Holt has complied with each of the above requirements. Counsel has presented a comprehensive review of the issues Appellant seeks to raise on appeal, the appropriate standard of review on appeal, and addressed the PCRA court's analysis where appropriate. *Turner*/*Finley* Br. at 10-11, 16-41. Based on this analysis, counsel concludes that Appellant's claims are without merit. *Id.* at 43-44. In addition, Attorney Holt sent Appellant copies of the *Turner*/*Finley* Brief and

his Application to Withdraw, and he advised Appellant of his rights in lieu of representation. *See* Application to Withdraw as Counsel, 4/5/20, Exh. B (Letter, dated 4/3/20). Because Attorney Holt has complied with the *Turner*/*Finley* requirements, we will proceed with our independent review of the record and merit of Appellant's claims.[4]

### Standard / Scope of Review

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)). "This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings." *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citation omitted). "Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." *Id.*

To be eligible for relief under the PCRA, a petitioner must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2): a constitutional violation; ineffective assistance of counsel; an unlawfully induced plea; improper

---

[4] On June 19, 2020, more than two months after counsel informed Appellant that he would seek leave to withdraw, Appellant *pro se* filed an Application for Extension of Time to respond to Attorney Holt's *Turner*/*Finley* Brief. Under these circumstances, and in light of our independent review of Appellant's claims, we deny Appellant's Application.

obstruction by governmental officials; a case where exculpatory evidence has been discovered; an illegal sentence has been imposed; or the tribunal conducting the proceeding lacked jurisdiction. **See** 42 Pa.C.S. § 9543(a)(2)(i)-(viii). In addition, a petitioner must establish that the issues raised in the PCRA petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." **Id.** at § 9543(a)(3), (a)(4).

### Improperly Enacted Law

In his first issue, Appellant asserts that 18 Pa.C.S. § 2502 (Murder) was not duly enacted as a penal statute and is, therefore, unconstitutional and illegal. **See** *Pro Se* Petition at 5; **Turner**/**Finley** Br. at 19-23. Appellant elaborated on this claim at the PCRA hearing, stating, "All laws must possess an enacting clause. That [Murder] statute does not possess an enacting clause; therefore, it is void from the beginning." N.T. PCRA at 10.

The PCRA court determined that this claim lacked merit. **See** PCRA Ct. Op. and Order, 9/24/19, at 4 (citing Act of December 6, 1972, P.L. 1482 No. 334, § 1). We agree.

Pursuant to 1 Pa.C.S. § 1101(a), all statutes are required to begin, "The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows." The clause must appear "immediately after the preamble or the table of contents of the statute." 1 Pa.C.S. § 1101(a). Although the enacting clause may not appear in certain electronic publications, the official codification of

the Crimes Code includes the necessary language. *See Commonwealth v. Stultz*, 114 A.3d 865, 879 (Pa. Super. 2015) (clarifying that, while the West Publishing Company has omitted the enacting clause from its annotated edition of the Crimes Code, the law was properly enacted). Thus, Appellant's claim is without merit.[5]

### *Illegal Sentence*

In his second issue, Appellant claims that he is serving an illegal sentence because the court "imposed Judgment pursuant to a Crimes Code that only pertains to a capital case[.]" *Pro Se* Petition at 5; *see Turner/Finley* Br. at 23-27. Essentially, according to Appellant, the Commonwealth's decision to forego a possible death penalty rendered his conviction for First-Degree Murder deficient, because there is no other viable penalty established under the Crimes Code to sentence a defendant convicted of First-Degree Murder. *See* N.T. PCRA at 7-9.

In rejecting this claim, the PCRA court explained the statutory framework that underlies the sentencing process following a conviction for First-Degree Murder. *See generally* PCRA Ct. Op. and Order, 9/24/19, at 4-6. As the court noted, Section 1102(a) of the Crimes Code provides that "person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment in accordance with 42

---

[5] We note further that Appellant does not explain why he could not have raised this claim prior to or during trial or on direct appeal. Thus, for this reason also, Appellant has not established that he is eligible for relief on this claim. *See* 42 Pa.C.S. § 9543(a)(3), (a)(4).

Pa.C.S. § 9711."  18 Pa.C.S. § 1102(a).  In turn, Section 9711 sets forth the procedure whereby a jury, or under appropriate circumstances the trial judge, shall hear evidence and determine whether a sentence of death is appropriate. 42 Pa.C.S. § 9711.

Reviewing this framework, we agree with the PCRA court's conclusion that the sentencing options outlined in Section 1102(a) are not limited to "capital" offenses, *i.e.*, the sentencing process "does not require the Commonwealth to present both a death sentence and a life imprisonment sentence to a jury."  PCRA Ct. Op. and Order, 9/24/19, at 6.  We discern no error in the court's conclusion.  Thus, because the Commonwealth declined to pursue the death penalty, the trial court properly imposed the only other sentencing option available upon Appellant's conviction for First-Degree Murder, life imprisonment without the possibility of parole.  18 Pa.C.S. § 1102(a).  Thus, we conclude that Appellant's illegal sentence claim is without merit.[6]

### *Ineffective Assistance of Trial Counsel*

---

[6] It is well-settled that the Commonwealth "possesses the initial discretion regarding whether to seek the death penalty in a murder prosecution." ***Commonwealth v. Buck***, 709 A.2d 892, 896 (Pa. 1998) (citation omitted). The Commonwealth's discretion in deciding whether to pursue a death sentence is not unfettered. ***Commonwealth v. Chamberlain***, 30 A.3d 381, 424-25 (Pa. 2011) (listing cases recognizing limits placed upon the Commonwealth in accordance with Section 9711 requirements that there is evidence of aggravating circumstances).  However, we are aware of no precedent that would permit Appellant to challenge the Commonwealth's decision **not** to pursue the death penalty.

In his third, fourth, and fifth claims, Appellant asserts ineffective assistance of counsel. *Pro Se* Petition at 6; Amended PCRA Petition at 1-2 (unpaginated); **Turner**/**Finley** Br. at 27-40.

We presume counsel is effective. **Commonwealth v. Cox**, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. **Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012). A claim will be denied if the petitioner fails to meet any one of these prongs. **See Jarosz**, 152 A.3d at 350 (citing **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009)).

*Adoption of the PCRA Court's Analysis*

Appellant asserts that trial counsel was ineffective for: (1) failing to object to certain statements made by the prosecuting attorney during closing argument; (2) failing to request a jury instruction regarding Appellant's alleged gang membership; and (3) failing to introduce allegedly exculpatory portions of a surveillance video recorded at the bar at the time of the murder. *Pro Se* Petition at 6; Amended PCRA Petition at 1-2 (unpaginated); PCRA N.T. at 12-15.

The Honorable Craig T. Trebilcock has authored well-reasoned analysis addressing each of Appellant's ineffectiveness claims. After a thorough review of the certified record, the briefs of the parties, the applicable law, and the PCRA court's Opinion, we conclude that there is no merit to these claims. Accordingly, we adopt that Opinion in part as our own and affirm the court's denial of relief. *See* PCRA Ct. Op. and Order, 9/24/19, at 7-10 (concluding the trial counsel had a reasonable basis for not objecting to the prosecutor's remarks, as the prosecutor merely made reasonable inferences based upon the evidence and the remarks fell within the reasonable scope of advocacy), 10-12 (concluding that counsel did not have a reasonable basis to request a limiting instruction because there was no evidence that Appellant was affiliated with a gang); 12-13 (concluding that (a) counsel had a reasonable basis for not proffering additional video evidence because the footage admitted was the least inculpatory evidence available and, noting that Appellant did not present any allegedly exculpatory video evidence at the PCRA hearing; (b) Appellant's assertions were unsupported and speculative).

### *Motion to Amend*

In his final issue, Appellant asserts the PCRA court erred in denying his Motion to Amend. *Turner*/*Finley* Br. at 40. For the following reasons, we affirm the PCRA court's decision.

A petitioner must request and obtain leave to amend a PCRA petition. *Commonwealth v. Baumhammers*, 92 A.3d 708, 730 (Pa. 2014). "Amendments are not 'self-authorizing.'" *Id.* (citation omitted).

Pennsylvania Rule of Criminal Procedure 905 governs the amendment and withdrawal of petitions for collateral relief. In relevant part, the Rule provides that the PCRA court "may grant leave to amend . . . a petition for post-conviction collateral relief at any time" and that "amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A).

"Pursuant to this Rule, PCRA courts are invested with discretion to permit the amendment of a pending, timely-filed post-conviction petition, which must be exercised consistently with the command of Rule 905(A) that amendment should be freely allowed to achieve substantial justice." **Commonwealth v. Crispell**, 193 A.3d 919, 930 (Pa. 2018) (internal quotation marks and citation omitted). "Adherence to this liberal standard for amendment is essential because criminal defendants may have just one opportunity to pursue collateral relief in state court." **Id.**; **see also, e.g.**, **Commonwealth v. Flanagan**, 854 A.2d 489, 499-500 (Pa. 2004) (approving the PCRA court decision to permit amendment approximately ten years after an initial, timely filing).

Nevertheless, in considering the discretion accorded the PCRA court, our Supreme Court has stressed that "a PCRA court **may** grant leave to amend," but is not required to do so. **Commonwealth v. Williams**, 732 A.2d 1167, 1191-92 (Pa. 1999) (emphasis in original) (discerning no abuse of the PCRA court's discretion in denying leave to amend a petition "[g]iven the generality of th[e] claim and the timing of its assertion").

In rejecting Appellant's Motion to Amend, the PCRA court considered both the timeliness of Appellant's request, as well as the lack of factual support for his claim. The court observed that Appellant "provided no information or evidence to support his claim" that a Commonwealth witness had perjured himself at Appellant's trial. PCRA Ct. Op. and Order, 7/19/19, at 2. In a single averment, Appellant had alleged that he "believe[d] that the Commonwealth allowed [a] witness . . . to present perjured testimony", thus entitling Appellant to a new trial. Motion to Amend at 1 (unpaginated). Considering this averment and its belated assertion, the PCRA court reasoned that Appellant's "subjective belief concerning the credibility of an adverse witness . . . is not an adequate basis upon which to open the record and permit the amending of [Appellant's] PCRA Petition." PCRA Ct. Op. and Order, 7/19/19, at 2-3.

We agree. Appellant provided no adequate explanation or argument to support his Motion to Amend filed nine months after the PCRA hearing. Appellant did not include an affidavit from the Commonwealth witness recanting his trial testimony or any other documentary evidence establishing a factual predicate underlying his bald claim. Appellant did not assert that the witness's testimony was unfairly prejudicial or offer any explanation as to how its presentation undermined the truth determining process. Appellant did not allege the Commonwealth knowingly presented this testimony to the jury. Indeed, Appellant did not even identify the substance or context of this allegedly perjurious testimony. ***See generally*** Motion to Amend.

Moreover, considering that Appellant's evidentiary hearing occurred approximately nine months prior to his filing of the Motion to Amend, it was appropriate for the PCRA court to consider the timeliness of Appellant's request balanced against the absolute lack of support for Appellant's claim. Thus, we conclude that Appellant presented a bald allegation of error that warranted no further consideration.

### *Conclusion*

Based on the foregoing, we affirm the PCRA court's denial of relief.[7] The parties are instructed to annex the PCRA court's September 24, 2019 Opinion to any future filings.

Application for Extension of Time denied. Application to Withdraw as Counsel granted. Order affirmed.

_____

[7] The PCRA court also determined that it lacked jurisdiction to consider Appellant's Motion to Amend. *See* PCRA Ct. Op. and Order, 7/19/19, at 1-2 (concluding that Appellant's Motion was subject to the PCRA's timeliness requirements). We disagree with this analysis. Where, as here, the PCRA court considers a motion to amend a timely petition for collateral relief, the relevant analysis is governed by the liberal standard set forth in Rule 905, rather than the jurisdictional, timeliness provisions of the PCRA. *See Crispell*, 193 A.3d at 929 (under similar circumstances, expressly rejecting a jurisdictional analysis). **Notwithstanding its erroneous determination**, the PCRA court proceeded to consider whether to grant Appellant leave to amend. Thus, we may review and affirm the court's exercise of discretion. *See Commonwealth v. Oliver*, 128 A.3d 1275, 1279 (Pa. Super. 2015) (noting that we may affirm the PCRA court on any grounds supported by the record).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/30/2020

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :   NO.   CP-67-CR-0000098-2014
                   :

vs.                          :

HALIM BOWEN,              :
   Defendant             :

COUNSEL OF RECORD:

   James E. Zamkotowicz, Esquire         Aaron Holt, Esquire
   Counsel for the Commonwealth         Counsel for Defendant

## OPINION AND ORDER

Before the Court is the Defendant's petition for relief under the Post-Conviction Relief Act

("PCRA"). For the reasons addressed below, the Court hereby **ORDERS** that the defendant's request

for relief under the Post-Conviction Relief Act (hereinafter: PCRA) is **DENIED**.

## PROCEDURAL HISTORY

Defendant was found guilty of First Degree Murder on December 10, 2014. Defendant

filed a timely PCRA Petition on October 3, 2017. {Defense counsel filed a Memorandum of Law

in support of the PCRA petition on January 24, 2018.} A PCRA hearing was held on July 23,

2018 before this court.

## ISSUES PRESENTED

The Defendant raises five issues before the Court: (1) a constitutional violation due to the

statute he was charged under not being "properly enacted"; (2) a constitutional violation due to

improper judgement; (3) ineffectiveness of defense counsel for failing to alleviate prejudice caused

by prosecutor's closing statements; (4) ineffectiveness of counsel for failing to request a limiting

instruction on gang testimony and media coverage; (5) ineffectiveness of counsel for failing to

introduce alternative surveillance video angles.

1

## STANDARD OF REVIEW

When a defendant claims that the law is unconstitutional or improperly enacted, they must show, "A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States *which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.*" *Commonwealth v. Rivers*, 567 Pa. 239, 244 (2001)(citing 42 Pa.C.S.A. § 9543(a)(2))(emphasis added). Per the Pennsylvania Supreme Court in *Rivers*, PCRA petitioners must plead and prove their assertions by a preponderance of the evidence. *Id.* at 245. The Court stated, "[T]he petitioner must establish by a preponderance of evidence that because of the alleged constitutional violation or ineffectiveness, no reliable adjudication of guilt or innocence could have taken place." Id. at 246 (quotation marks, brackets, and citations omitted). The *Rivers* Court also explained that the burden is on the PCRA petitioner to demonstrate that they are not merely attempting to re-litigate issues that have been or could have been brought elsewhere:

> Finally, petitioner must plead and prove that the issue has not been waived or finally litigated, and if the issue has not been litigated earlier, the petitioner must plead and prove that the failure to litigate could not have been the result of any rational, strategic or tactical decision by counsel. *Id.* (emphasis added; quotation marks, brackets, and citations omitted); See also 42 Pa.C.S.A. § 9543(a)(3)(petitioner must plead and prove by a preponderance of the evidence "[t]hat the allegation of error has not been previously litigated or waived.")

As stated above, in addition to showing that these issues have not previously been litigated, a petitioner must make clear that the determination of their guilt or innocence was made impossible by the alleged constitutional violation by the Commonwealth. They may not merely claim that there was a constitutional violation without tying it to the determination of their culpability.

2

In regard to Defendant's with ineffectiveness of counsel claims, in *Strickland v. Washington* the Supreme Court stated, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Pennsylvania codified this principle in the Post-Conviction Relief Act, which provides post-conviction relief for "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Pennsylvania's Supreme Court has interpreted this to mean that to show ineffective assistance of counsel, a petitioner must show that: "(1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citing *Commonwealth v. Collins*, 957 A.2d 237, 244 (Pa. 2008)); See also, *Commonwealth v. Rollins*, 738 A.2d 435, 441 (Pa. 1999). The test for ineffectiveness requires an evaluation of whether counsel's actions lacked a reasonable basis. *Cox, 983 A.2d, at 678* ("[a] chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'").

In *Commonwealth v. Pierce*, the Pennsylvania Supreme Court wrote that, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001) (citing Commonwealth v. Kimball, 724 A.2d 326, 332 (Pa. 1999)), abrogated on other grounds, Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002); See also, *Commonwealth v. Fletcher*, 986 A.2d 759, 772 (Pa. 2009) (citations omitted).

3

Per *Pierce*, the Court examines whether there is a reasonable probability that, but for trial counsel's error the outcome of the trial would have been different. *Id.* at 213. Lastly, "the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner." 983 A.2d 666, 678 (Pa. 2009) (citing *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000)).

## OPINION

*The Laws Under Which the Defendant was Sentenced were not Properly Enacted*

The Defendant claims that he was not convicted under an "actual law," but a mere "replica" law. Defendant's *Pro Se* PCRA Petition at (2)(E). The Defendant attempted to clarify his position at his PCRA hearing, "Just with a bill, if the legislature passed a bill without enacting clause, that bill is void. It's the same thing with a law. If you pass the law without an enacting clause, that law is void." PCRA Hearing Transcript at 9. Pennsylvania Law does require all statutes to begin in the following style: "The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:" 1 Pa.C.S. § 1101. But the Defendant failed to consider that the law he was charged under, 18 Pa.C.S.A. § 2502(a), did include that language in the slip law under which it was formally enacted. *See* 1972, Dec. 6, P.L. 1482, No. 334, § 1. Accordingly, the Defendant's claim is denied.

*Constitutional Violation due to Judgement Imposed Under Wrong Section of the Criminal Code*

At his PCRA hearing, the Defendant argued that he was charged with first-degree murder under a portion of the criminal code that only allows for conviction of first-degree murder where there exists the possibility of a death penalty. PCRA Hearing Transcript at 6-8. His argument is that because he was not facing the death penalty at trial, he was improperly convicted under the wrong section of the Pennsylvania Criminal Code. When asked to clarify his position, at his PCRA hearing, he stated:

4

I believe, because I still today I don't know what statute I'm charged with, but I believe I'm charged under 2502, which is first-degree murder, and I guess the sub statute for that is 1102. I didn't bring my notes up here to read it verbatim, but 1102 says you can only be sentenced to death and life imprisonment in accordance with 9711, and, when you go to 9711, it only pertains to a death penalty case. Being that I wasn't facing a death penalty for the case, I don't qualify for first-degree murder. PCRA Hearing Transcript at 6-7.

His PCRA attorney then attempted to further clarify this argument by asking:

So basically, just to summarize, your position is because of the sentencing provisions of the statute for first-degree murder only go into effect as far as how to sentence someone under the capital case, those procedures weren't followed in your case because it wasn't proceeded as a capital case? Id. at 7.

The Defendant answered that this was the correct summary of his position. In his *pro se* PCRA petition the Defendant also stated his position and said, "Petitioner asserts, his sentence, imposed to the aforementioned statute is unconstitutional and void *ab initio* because it was imposed pursuant to a crimes code that only pertains to 'capital cases' (cases where the defendants face the death penalty)." Defendant's *Pro se* PCRA Petition (incorporated into his Amended PCRA petition at the PCRA hearing) at (1)(C).

The Defendant asserts that "the mere fact that 18 Pa.C.S. § 1102(a) can only be imposed in accordance with 42 Pa.C.S. § 9711 and 18 Pa.C.S. § 2502(a) is the statute that outlines what constitutes murder of the first degree, means all three statutes only apply to murder cases that have been deemed 'capital' in nature." Defendant's *Pro se* PCRA Petition at (1)(H). This argument would appear to boil down to whether "the Commonwealth of Pennsylvania has no law governing how to properly charge, convict and sentence a defendant charge [sic] with a non-capital murder

5

of the first degree charge." *Id.* at (1)(T). The Defendant is arguing he cannot be sentenced under 18 Pa.C.S. § 1102(a), the only provision under which he could be sentenced for first-degree murder, which requires adherence to the procedures outlined in 42 Pa.C.S. § 9711, because section 9711 applies to cases that have been pre-determined to be "capital" in nature while his case was non-capital from the start.[1]

The Defendant's argument fails because at no point does section 9711 restrict its own application, or the application of section 1102(a), to "capital" offenses. The Defendant does not point to any language in any of the three laws he cites that actively restricts their application to non-capital first-degree murder convictions. Section 9711 mandates the procedure by which a jury will determine a death sentence or life imprisonment; there is no further implication that a defendant cannot be sentenced under section 1102(a) without the state bringing a capital case. Section 1102(a) merely states "a person who has been convicted of a murder of the first degree or of murder of a law enforcement officer of the first degree shall be sentenced to death or to a term of life imprisonment *in accordance with* 42 Pa.C.S. § 9711." 18 Pa.C.S. § 1102(a)(emphasis added). The phrase "in accordance with" does not require the Commonwealth to present both a death sentence and a life imprisonment sentence to a jury.[2] The Court finds no merit in his argument as it is based on a misinterpretation. His claim is therefore denied.

The Court further finds that this argument fails for two procedural reasons. First, the Defendant does not explain how the alleged constitutional violation, "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt

---

[1] The Defendant states that "his criminal homicide case has never been deemed a 'capital case' before or after trial and he cannot be (legally) found guilty of first degree murder in the Commonwealth of Pennsylvania because the Commonwealth of Pennsylvania has no law [on] how to properly sentence a 'non-capital' first degree murder conviction!" Defendant's Pro Se PCRA Petition at (1)(I).

[2] And if, as the Defendant's argument implies, the statute does require all first-degree murder convictions to be tried as capital cases, the Defendant would do well to hope the Superior Court does not order his resentencing.

6

or innocence could have taken place." The Defendant merely argues that the imposition of his sentence was unconstitutional, but the PCRA statute clearly requires him to plead and prove by a preponderance of the evidence that the alleged constitutional violation rendered the adjudication of his guilt or innocence impossible. The sentencing issue does not speak to his guilt and therefore his claim fails.

Second, the Defendant did not at any point, at the PCRA Hearing or in his PCRA petition, demonstrate that this issue was not previously waived or litigated as required by the Post-Conviction Relief Act. The Defendant's claim lacks the specificity required by the PCRA and his request for relief is denied.

*Failure to Request the Court to Alleviate Prejudice Caused by Prosecutor's Closing Arguments*

The Defendant argues that certain parts of the prosecutor's closing argument were improper and that his trial counsel was ineffective for not objecting to the alleged misconduct during the closing argument. Specifically, the Defendant alleges that his counsel should have objected to the prosecutor's statement that the Defendant pushed through security to get into the club in which the shooting took place. PCRA Hearing Transcript at 10-11. The Defendant also wanted his trial counsel to object to the prosecutor's reenactment of the shooting during his closing statements. Id.

With regard to the first claim, the Defendant argues that the prosecutor made misstatements that prejudiced the case against him in his closing argument. The alleged misstatements were about the Defendant not being searched prior to entering the club, despite testimony from the security guards that the Defendant was checked with a metal detecting wand prior to entering the club. Defendant's *Pro Se* PCRA Petition at (4)(C). Specifically, the Defendant alleges that the prosecutor, "[m]ultiple times during his closing argument, he said that it was testimony that I wasn't searched before I came into this bar, that I pushed past security to get into this bar." PCRA

7

Hearing Transcript at 10. The Defendant, at his PCRA hearing and in his *pro se* PCRA petition, makes the trial testimony regarding the occurrence of the search seem far more certain than that testimony warrants. The testimony of the club security guard, Jordan Sweitzer, is equivocal about whether the Defendant was properly searched that night. When asked if he specifically saw the Defendant get searched, the security guard stated, "I was focused on getting him his change, but he was going through the regular process when I looked down." N.T. at 158. Regarding the use of the wand, the most the security guard could offer was that his partner on the door was "using the wand from my knowledge." Id.[3]

The prosecutor, in his closing arguments, spoke about these events and stated, "Although the security guards were wanding people, [the Defendant] decided he wasn't going to be wanded that night and so he walked right past Jordan Sweitzer." N.T. at 396. This was within the reasonable scope of advocacy in view of the fact the security personnel could not attest with certainty to seeing the Defendant wanded. The prosecutor did not say such testimony was given at trial. He said, "And I would ask that your recollection of the testimony should be the recollection that matters here. So, for example, if defense in his arguments says Ari wanded him down and then I'm arguing different, it's your recollection that counts." N.T. at 396-97. As the Defendant recognized in his *pro se* PCRA Petition, "The prosecutor may argue all reasonable inferences from evidence in the record." Defendant's *Pro Se* PCRA Petition at (4)(D)(citing *Commonwealth v. Lipscomb*, 317 A.2d 206, FN 3 (1974)). Further, the case cited by the Defendant addresses the issue of a prosecutor who makes a "personal assertion" as to the guilt or innocence of a defendant rather than one who makes

---

[3] The Defendant's focus on the issue of being fully wanded or not is a bit of a red herring, when the Commonwealth presented eyewitness testimony from one of the Defendant's friends within the bar, Walter Brown, that the Defendant came up to him and showed him the gun he was carrying before the shooting occurred. N.T. 113-14. Any discrepancy about wanding fails to establish a substantial likelihood of a different trial outcome when there was unequivocal eyewitness testimony the Defendant had a gun.

8

a permissible inference from the evidence as a whole presented at trial. *Commonwealth v. Lipscomb*, 317 A.2d 206, 207 (1974).

From the fact that the Defendant showed he possessed a weapon to an eyewitness within the bar before the shooting occurred, there is certainly no prosecutorial misconduct for the prosecutor to argue that the Defendant avoided being wanded. There is no misconduct and the issue is denied.

The only mention of the allegedly improper re-enactment of the shooting comes from the PCRA hearing, not the Defendant's *pro se* or amended PCRA Petitions. The Defendant claimed the prosecutor's reenactment of the shooting was "execution style" with the victim on his knees being shot from the back. PCRA Hearing Transcript at 11, 17. The Court finds no evidence to support the Defendant's recitation of these events as being accurate or credible. Further, the Defendant argued the ballistics report did not allow for the conclusion that his victim was killed in such a fashion. PCRA Hearing Transcript at 11. But the Commonwealth's evidence clearly shows the Defendant was shot in the back. Commonwealth's Exhibits 1, 2, 4. The prosecutor's re-enactment of the shooting as being in the back amounts to a reasonable inference of the events that took place given the evidence.

The Defendant is making his arguments in the context of ineffectiveness of counsel for failing to object to the arguments made by the prosecution in their closing arguments. The Court finds that the Defendant's trial counsel had a reasonable basis for not objecting during closing the prosecutor's closing arguments. First, the prosecutor's arguments were based on reasonable inferences given the evidence presented at trial and therefore were not objectionable. Second, the Defendant's trial counsel, Attorney Kevin Hoffman, stated at the PCRA Hearing that he did not want to object in the middle of the prosecutor's closing arguments because it could draw attention to damaging information that might not actually be objectionable, thereby unnecessarily harming

9

his client's case. PCRA Hearing Transcript at 17-18. This was a reasonable tactical choice by counsel. Because there was a reasonable basis for the trial counsel's action this Court finds the Defendant's argument fails the second prong of the *Cox* test and is therefore denied. The Court also finds that the Commonwealth's alleged reenactment did not rise to the level of prosecutorial misconduct and did not prejudice the Defendant.

Finally, the Defendant failed to consider or mention the clear instruction the court gave the jury before they began their deliberations that closing arguments are not evidence: "Obviously the statements of the attorneys during making objections or arguments to the court or even questioning witnesses are not evidence in the case. The evidence comes from the testimony of the witness and any exhibits that have been presented to you for your consideration." N.T. at 420. The Defendant has provided no evidence that the jury did not comply with that instruction. Accordingly, the Court has no reason to believe that the jury did not correctly hear the testimony and conduct their fact finding function consistent with the law. As such, Defendant's request for relief on this issue is denied.

*Failure to Request a Limiting Instruction Regarding Gang Testimony*

The Defendant argues that his trial counsel was ineffective for failing to request a limiting instruction regarding gang testimony introduced at trial. The Defendant argues that multiple references to the "South Side Gang" and his potential affiliation therewith at trial, in combination with local media coverage of the gang, prejudiced the jury against him. Defendant's Amended PCRA Petition at 1-2. The Court finds that this argument fails for two reasons. First, the jury received a limiting instruction at the outset of the trial instructing them to not "read the newspaper about anything about the case or look at anything on television or listen to anything on the radio about it . . . You can't use any of those things during your service as jurors to get any outside

10

information concerning this case." N.T. at 72.[4] The court made it clear in its opening instructions to the jury that they should evaluate the case solely on the basis of the evidence and testimony provided by both parties. N.T. at 73-74.

Second, there was no testimony of a potential affiliation of the Defendant with the South Side Gang. Testimony regarding the South Side Gang came up in the context of testimony by Commonwealth witness Walter Brown, a friend of the Defendant. Mr. Brown testified that when he saw the Defendant at the club, he asked him what he was doing there and if the Defendant knew members of the South Side Gang were also at the bar. N.T. at 113.[5] This is important because the only reference the prosecutor made in his closing arguments were these remarks by Mr. Brown. The prosecutor did not allege that the Defendant was a member of the South Side Gang, or any other gang, merely that he knew the gang members were at the club and that such knowledge explains why he was armed that night. N.T. 401-02. The Court finds that this did not give rise to the need for a jury instruction telling the jurors to be wary of the negative connotations gang membership may elicit. Such an instruction, if given, might have indeed planted the seed that Mr. Bowen was himself a gang member, when no evidence introduced or argued by the

---

[4] Further, trial counsel did bring up the issue of local media coverage to the court and the court issued an instruction reiterating the need to determine the case solely on the evidence and testimony provided at trial. N.T. at 165-66 (The court to the jury at trial: "I know there was some news coverage, perhaps in the local newspapers, online. Did anyone read any of the stories, either by accident, you got into it and realized what it was? Nobody did? All right. Again, obviously you've got to decide your case on the evidence presented here in the courtroom, not on any media or what some reporter's interpretation of the case is, so continue with those cautions."

[5] From the Trial Transcript in which the prosecutor questions Walter Brown:
"Q: Why were you surprised to see him at George's [the club]?
A: Because I told him not to come because the South Side was going to be in there.
Q: Okay. And so you were surprised that he came anyway?
A: Yeah.
Q: And did you say anything to him, to the – I mean did you say anything to him about being in the bar?
A: When he first came in, I told him the whole South was on the stage.
Q: And what did he say?
A: He said he was straight.
Q: And what do you mean by straight?
A: He said he was straight. He said he was cool, lifted up his shirt. He had a strap.
Q: And just for the jury, when you say he had a strap, what are you referring to?
A: He had a gun" N.T. at 113-14.

11

Commonwealth asserted such a position.[6] Therefore, trial counsel did not have a reasonable basis for requesting a limiting instruction on this point and the Defendant's argument is without merit. Accordingly, it is denied.

Further, the Defendant did not at any point, in his PCRA petitions or at his PCRA hearing, offer what instructions he believed the jury should have been given under the facts of the case. He cannot demonstrate prejudice against himself, because he has not shown what instruction would have been appropriate where there was no evidence presented, argued, or implied he was a gang member. He therefore fails the third prong of the *Cox* test. This Court finds that no error was committed by the trial counsel on this issue, and there is no arguable merit to the Defendant's claims. Defendant has waived any basis for relief by failing to specify what additional instruction(s) merited presentation.

*Failure to Introduce Alternative Angle of Surveillance Video*

The Defendant's final argument is that his attorney was ineffective for failing to introduce surveillance video that would have presented an alternative angle of the crime scene at the time of the shooting. Specifically, the Defendant stated in his PCRA hearing that his issue with the video was that:

> Well, on the video, me and [Attorney] Kevin Hoffman watched it together, and we pointed out that in the video when it shows the time when Jamie Santabria was shot and it shows me standing there and it shows the time the gunshot went off, that I flinched when Jamie Santabria went to the ground.

---

[6] It is not inevitable that the mere mention of a "gang" in a case, creates an affiliation to the Defendant or resulting prejudice. Bowen could have been a prior victim of gang violence, a member of law enforcement, or there may have been many any number of other reasons in the jury's mind why Brown may have told him gang members were in the bar.

12

The DA put a stipulation that didn't show the jury or anybody else the part where I flinched when the gunshot went off. If I flinched when the gunshot go off, why would I flinch if I shot him? PCRA Hearing Transcript at 12.

The Defendant wanted surveillance footage shown to the jury that would have proved he flinched at the time the gun went off. The inference the Defendant supposes the jury would make is that one cannot flinch when firing a weapon. The Court does not find any merit in the Defendant's unsupported and speculative argument. At the PCRA hearing Attorney Hoffman stated that he reviewed the footage with the Defendant and said that he believed the video portions admitted at trial were the most favorable to his client and that he would have objected to any that were misleading to the jury, if they had appeared. PCRA Hearing Transcript at 18-19. The fact that the Defendant has contrived, unsupported by competent evidence, a self-serving theory about when persons flinch, or do not flinch, when around gunfire, is not a basis for granting relief. The Defendant has failed to establish that the failure to introduce other video angles lacked a reasonable basis, which if corrected, would likely have offered a potential for success substantially greater than the course actually persued. Further, the Defendant failed to present any evidence at the PCRA hearing of alternate video angles that would have resulted in a substantial likelihood of a different outcome to his trial. The Defendant has failed to carry his burden on this issue, and accordingly, the request for relief is denied.

## CONCLUSION

For the aforementioned reasons the Defendant's petition is **DENIED**.

**BY THE COURT**

CRAIG T. TREBILCOCK, JUDGE

**[SEPTEMBER 24, 2019]**

13